Argued and submitted July 14, affirmed October 26, 1982

MOORE,
*Respondent on review,*
*v.*
MOTOR VEHICLES DIVISION,
*Petitioner on review.*

(CA 18130)


In the Matter of the Refusal to
Submit to a Breath Test by:
SCHENK,
*Respondent on review,*
*v.*
MOTOR VEHICLES DIVISION,
*Petitioner on review.*

(CA A20656)


In the Matter of the Refusal to
Submit to a Breath Test by:
BUNTEN,
*Respondent on review,*
*v.*
MOTOR VEHICLES DIVISION,
*Petitioner on review.*

(CA 18170)


In the Matter of the Refusal to
Submit to a Breath Test by:
JAGGER,
*Respondent on review,*
*v.*
MOTOR VEHICLES DIVISION,
*Petitioner on review.*

(CA A20153)

In the Matter of the Refusal to
Take a Breath Test by:

CARTER,
*Respondent on review,*

*v.*

MOTOR VEHICLES DIVISION,
*Petitioner on review.*

(CA A21023)
(SC 28452)
(consolidated on review)

652 P2d 794

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Ronald D. Thom and Zack M. Lorts, Oregon City, filed a response to the petition for respondent on review Schenk.

Terrence B. O'Sullivan of Merrill and O'Sullivan, Bend, filed a response to the petition for respondent on review Carter. Oral argument was waived as to all respondents on review.

No appearance for respondents on review Moore, Bunten and Jagger.

Before Lent, Chief Justice, and Linde, Peterson, Tanzer, Campbell and Carson, Justices.

TANZER, J.

**TANZER, J.**

In each of these five consolidated cases, the Court of Appeals reversed a Motor Vehicles Division (MVD) order suspending a driver's license which the court held to be invalid under the Implied Consent Act, ORS 487.805 *et seq.* In each case, the licensee, upon being requested to submit to a breath test, asked or demanded to speak to an attorney. We allowed the state's petition for review to attempt to clarify principles applicable to drivers' license suspension proceedings.

The Motor Vehicles Division issued these orders pursuant to ORS 482.540 which requires the agency to suspend an operator's license for 120 days upon receipt of notice that the motorist has refused a chemical test of his breath. The Implied Consent Act provides that a motorist impliedly consents to chemical testing of his breath if he is arrested for driving under the influence of intoxicants and if a police officer having probable cause to believe he committed the offense asks him to submit to a breath test. ORS 487.805(1) provides:

> "Any person who operates a motor vehicle upon the highways of this state shall be deemed to have given consent, subject to ORS 487.805 to 487.835, to a chemical test of the person's breath for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 487.540 or of a municipal ordinance. A test shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving while under the influence of intoxicants in violation of ORS 487.540 or of a municipal ordinance."

ORS 487.805(2) sets out request and refusal procedures. It is phrased in the negative; that is, the test may not be administered if, after advice of the consequences of refusal (license suspension) and the permissibility of an independent test, the person refuses to submit to the test. ORS 487.805(2) states:

> "No chemical test of the person's breath shall be given, under subsection (1) of this section, to a person under arrest for driving a motor vehicle while under the influence of intoxicants in violation of ORS 487.540 or of a

municipal ordinance, if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of:

(a)  The consequences of a refusal under ORS 482.540 to 482.560 and this section; and

(b)  The person's rights [to independent testing] under ORS 487.810."

Taken together, ORS 482.540 and 487.805 provide a procedure whereby the state may suspend drivers' licenses. The statutes divide assigned procedural responsibilities among different agencies, namely police agencies and the Motor Vehicles Division.[1] Unlike situations where the action of one governmental agency may not bind another, these statutes establish one procedure culminating in a single state action, a license suspension, even though at least two agencies perform the requisite acts upon which that action is based. Therefore, in this statutory setting, an examination into the lawfulness of MVD orders must include scrutiny of both police action and MVD action for statutory and constitutional validity.

The Court of Appeals, with two opinions citing our plurality holding in *State v. Newton,* 291 Or 788, 636 P2d 393 (1981) (decided after these cases were submitted in the Court of Appeals), vacated the suspensions. *Newton* is distinguishable in that it is a criminal case regarding suppression or admissibility of evidence, whereas these cases present a civil review of the legality of administrative action. Nevertheless, several premises to the *Newton* decision are pertinent here. Most significant was our holding that an arrested person is entitled to communicate with counsel or others and that the police must reasonably accommodate a request to do so unless it would interfere with their duties. The plurality opinion identified the Fourteenth Amendment as the source of this liberty to communicate and the separate opinions looked to other sources, but all members of the court agreed that it exists and that it is subject to reasonable restriction for lawful police purposes. We said:

---

[1] Also, the Health Division of the Department of Human Resources has responsibilities for regulating testing procedures. ORS 487.815.

"* * * Defendant's freedom to call a lawyer before deciding to submit to breathalyzer testing was not safeguarded in this situation by the Sixth or Fourth Amendments, but, under the Fourteenth Amendment, *his freedom to do so could not be foreclosed or deferred unless the police were authorized to do so. Defendant's liberty to communicate as he chose was to be free from 'purposeless restraints,' but subject to lawful restraints.* * * *" (Our emphasis.) *Id.* at 806-807.

The most compelling source of "lawful restraints" in the Implied Consent Act cases relate to the fact that blood alcohol dissipates with the passage of time. We recognized that promptness was necessary:

"The police may lawfully restrict the freedom of an arrested person to communicate to the degree reasonably required for the performance of their duties. For example, where the police are authorized to seize 'highly evanescent evidence,' *see Heintz,* 286 Or at 248, and delay caused by an attempt to call counsel would impair their ability to effectively do so, they may require that the arrested person's exercise of the freedom to call be deferred until after completion of the seizure." *Id.* at 807-808.

■ Because the *Newton* record showed no circumstances which would justify denying the defendant an opportunity to call his lawyer, we held that the denial violated the defendant's rights and the breath test was unlawfully obtained. Our decision not to suppress the result of the test in a resulting criminal prosecution does not diminish the substantive holding that an unjustified refusal to allow an arrested person to call counsel is unlawful. That holding has different consequences where, as here, the decisional inquiry is the lawfulness of an agency's action rather than whether unlawfully obtained but trustworthy evidence should be admissible in a criminal prosecution.

■ In this case, the scope of a hearing challenging Implied Consent Act orders of suspension is governed by ORS 482.550(2):

"The scope of the hearing shall be limited to:

(a) Whether the person at the time he was requested to submit to a test was under arrest for driving a motor vehicle while under the influence of intoxicants in violation of ORS 487.540 or of a municipal ordinance;

(b)   Whether the police officer had reasonable grounds to believe, at the time the request was made, that the person refusing to submit to the test had been driving under the influence of intoxicants in violation of ORS 487.540 or of a municipal ordinance;

(c)   Whether the person refused to submit to a test;

(d)   Whether such person was informed of the consequences, under ORS 482.540 to 482.560, of his refusal to submit to the test; and

(e)   Whether such person was informed of his rights as provided in ORS 487.810."

Judicial review of the administrative order of suspension is allowed by ORS 482.560(1):

"* * * The trial in the circuit court shall be de novo and the appellant shall have the right to a jury as provided in criminal actions."

We take the reference to "trial * * * de novo" to mean that the same issues, those specified in ORS 482.550(2), are presented on judicial review as were material at the administrative hearing.

The argument in this case has focused on ORS 482.550(2)(c), "Whether the person refused to submit to a test." The state contends that we should adopt the rule applied by the Court of Appeals in *Stratikos v. Dept. of Motor Vehicles,* 4 Or App 313, 477 P2d 237, 478 P2d 654 (1970), *rev den* (1971); *see also Lundquist v. Motor Vehicles Div.,* 23 Or App 507, 543 P2d 29 (1975), and *Cavagnaro v. Motor Veh. Div.,* 19 Or App 725, 528 P2d 1090 (1974), that anything other than immediate submission to a request for a breath sample is a refusal. The rule is taken from an oft-cited passage from a leading New Jersey case:

"* * * As a matter of law, defendant had no right to have the advice of an attorney before determining whether he would accede to the test, insofar as the sanction of revocation for refusal is concerned. [Citations omitted.]

"In any event, the request for consultation with counsel necessarily involved a delay in administration of the test. Having in mind the remedial purpose of the statute, and the rapidity with which the passage of time and the physiological processes tend to. eliminate evidence of ingested alcohol in the system, it is sensible to construe the

statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so. * * * The occasion is not one for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request." *Stratikos v. Dept. of Motor Vehicles,* 4 Or App at 315, quoting *State v. Pandoli,* 109 NJ Super 1, 4, 262 A2d 41 (1970).

We agree with the general thrust of a rule requiring immediate submission and regarding any substantial delay as a refusal, but the rule must be applied with a flexible regard for arrested persons' freedom to communicate.

■      Also, we agree that a refusal to submit need not be explicit. ORS 487.805 does not suggest that there is no refusal unless and until the arrested person says "I refuse." The word "refusal," as used in the Implied Consent Act, means non-submission. *Newton,* 291 Or at 792-93. Thus, if an arrested driver is requested to submit to a breath test and, after the statutorily required advice is given he does not promptly do so, he has refused to submit. The refusal is implicit in his conduct.

On the other hand, there is not necessarily a refusal every time an arrested person fails to snap to like a recruit at the command of a drill sergeant. Otherwise, the Act would be more an administrative snare for the non-alacritous than an evidence-gathering process for release or prosecution. The construction and application of the statute must allow for both the public need to seize "highly evanescent evidence," *see State v. Heintz,* 286 Or 239, 248, 594 P2d 385 (1979), and that which we recognized in *Newton* as the liberty of an arrested person to communicate promptly upon arrest if it does not unreasonably interfere with performance of police duties.

We also held in *Newton* that the advice routinely given by the Oregon State Police was not necessarily correct in every case. That advice was:

" 'Regardless of any information you may have received before this request, the fact is that you are not entitled to have an attorney present at this breath test. Any request for a delay on this ground will constitute a refusal. * * *' " *Id.* at 791.

The advice may often be technically correct in that the time ordinarily taken to arrange for the attendance of counsel would likely impair the effectiveness of the test. Insistence on such a delay would be non-submission or refusal. On the other hand, it is conceivable that such arrangements could be speedily made without impairing the test. A request is not a delay. Insistence, as a condition of taking the test, can be a delay.

These cases involve requests and insistence to speak to attorneys rather than requests to have an attorney present. The routinely given advice is not apt.

■ A request to call a lawyer (or a relative or friend) is not in itself a refusal. It cannot be seized upon as a decisive event which ends the transaction between officer and arrestee as would non-submission or express non-refusal. On the other hand, an insistence on speaking to counsel under circumstances where to do so would significantly delay the testing would be non-submission constituting a refusal. We recognize that injecting circumstantial considerations into the process makes it less predictable than would strict application of the New Jersey rule, but it also makes it less draconian and more accommodative of liberty.

■ ■ We hold that if an arrested person, upon being given the advice required by ORS 487.805(2)(a) and (b), does not submit promptly to the request, his non-submission is a refusal. We further hold that if the person requests to speak with an attorney, the request itself is not a refusal and the person must be afforded reasonable opportunity to do so unless or until it would interfere with effective administration of the test. For example, a person might be given opportunity to call during the 15-minute observation period without affecting the validity of the test. If a person requests to communicate and is afforded a reasonable opportunity to do so, consistent with the temporal requirements of the testing process, and the person does not submit to the test, that is a refusal.

If an arrested person asks to speak to counsel, an unjustified failure to afford reasonable opportunity to do so would be a deprival of the person's liberty, *see Newton*. In that situation, the person's non-submission (*i.e.,* refusal)

would have resulted from a legally unauthorized procedure. An administratively imposed penalty based on that procedure would be invalid.

Our holdings apply variously to the cases at bar. We take the facts largely from the petition for review which, in turn, takes them from the record or from the Court of Appeals.

## Moore v. MVD

■ Moore was arrested for DUII, and the police officers requested that he take a breath test. Rather than explicitly agreeing or refusing to take the test, Moore kept repeating "I want an attorney." The police advised Moore of his rights under the Implied Consent Law, the consequences of refusal, and that, if he insisted on telephoning his attorney, his response would treated as a refusal. When he continued to ask for an attorney, the officers told him that his insistence was deemed to be a refusal. Shortly thereafter, Moore was permitted to telephone his attorney but was unable to reach him.

The officers did not thereafter request Moore to take the breathalyzer test because as far as they were concerned, petitioner had already refused, and a refusal form had been filled out stating that petitioner's refusal resulted from his requesting to talk to his attorney.

Petitioner Moore's conduct in requesting counsel was not a refusal. To have deemed it a refusal was erroneous. Had the police allowed Moore to try to call his lawyer prior to a final request, a different case would be presented. The order as to *Moore* must be vacated.

## Schenk v. MVD

Arrested for DUII and taken to the Clackamas County Jail, Schenk was offered a breath test. In response, Schenk stated that he wanted to talk to an attorney but did not expressly refuse to take the test. According to the officer,

> "He kept saying that he wanted to call his attorney first. I advised him that under the circumstances if he didn't take the test, that it would be considered a refusal. He said he wasn't refusing but he wanted to talk to an

attorney. He said an attorney. He didn't say which one. I asked — or advised him that that wasn't possible and read him the consequences and rights of a driver under the implied consent law, advised him that any request for delay would constitute a refusal. He still wouldn't take the test. * * *"

The order as to *Schenk* must be vacated for the same reason as in the *Moore* case.

## Bunten v. MVD

■ Bunten was arrested for driving under the influence of intoxicants and taken to the Washington County Jail. On arrival, he was asked to take a breath test; he asked if he could call his attorney before submitting to the test; he was told he could not. Petitioner then refused to take the test without advice from counsel.

Bunten actually refused. The refusal, however, was the direct result of a procedural error, the unjustified deprival of Bunten's liberty to call his attorney. The order as to *Bunten* must be vacated.

## Jagger v. MVD

The police arrested Jagger for DUII, took him to the Linn County Jail, and requested that he take a breath test. Jagger refused to do so, stating that he wanted to contact an attorney. The police then refused to permit Jagger to use an available telephone for this purpose and informed him of the statutory consequences of his refusal. He was also read the routine advice that he was "not entitled to have an attorney present at this breath test. Any request for a delay on this ground will constitute a refusal." This advice, of course, was not responsive to Jagger's request.

These facts could be analyzed either as those in *Moore* or as in *Bunten.* Either way, the order as to *Jagger* must be vacated.

## Carter v. MVD

■ Carter, having been arrested for DUII, was offered a breath test. He responded, "Not without the advice of my attorney," which MVD found to be a refusal to submit to

the test. The parties stipulated that the sole issue for trial is whether Carter's statement was a refusal. No facts were shown or issue presented regarding a request to speak to counsel. Carter's response was not a submission and, for purposes of the Implied Consent Act, is deemed a refusal. The order of suspension must be upheld.

In *Moore, Schenk, Bunten* and *Jagger,* the Court of Appeals is affirmed.

In *Carter,* the Court of Appeals and the circuit court are reversed.