On appellant's reconsideration filed June 4, reconsideration of former opinion (85 Or App 267, 736 P2d 580) denied October 7, petition for review denied November 3, 1987 (304 Or 311)

In the Matter of the Suspension of
the Driving Privileges of

MORGAN et al,
*Respondent,*

*v.*

MOTOR VEHICLES DIVISION,
*Appellant.*

(862063; CA A40915)

743 P2d 774

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Robert M. Atkinson, Assistant Attorney General, Salem, for petition.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

PER CURIAM

Rossman, J., dissenting.

**ROSSMAN, J.,** dissenting.

MVD petitions for reconsideration. ORAP 10.10. I would grant reconsideration, because I now believe that our opinion is erroneous.

We affirmed a judgment reversing an MVD order suspending Morgan's driving privileges for refusing to take an Intoxilyzer test. In so doing, we noted that, under *Moore v. Motor Vehicles Division,* 293 Or 715, 652 P2d 794 (1982), the proper inquiry for determining whether a motorist's request to consult with an attorney, or someone else,[1] amounts to a "refusal" under ORS 813.100[2] is whether the request was inconsistent with the need to conduct a breath test in a timely manner. 85 Or App 267, 271, 736 P2d 580 (1987). We read *Moore* to say that only a request which interferes with the timely execution of the test can constitute a refusal. We then made it incumbent on the state to demonstrate that delay beyond the mandatory 15-minute pretest observation period would adversely affect administration of the test. 85 Or App at 271 n 6.

MVD contends that we erred in two respects: (1) In not finding that speaking to an attorney on the telephone satisfies the requirement that an arrestee be given a reasonable opportunity to communicate beyond confinement; and (2) in requiring further evidence beyond the passage of time to establish that delay beyond the 15-minute observation period was inconsistent with effective administration of the test.

In sum, MVD contends that, so long as the motorist has had a reasonable opportunity to communicate beyond confinement, any delay beyond the mandatory 15-minute observation period must be presumed to be a nonsubmission and constitutes a refusal. Upon further reflection, I am now persuaded that MVD's contention is correct. In the light of what this court held in *Luth v. Motor Vehicles Division,* 87 Or App 137, 741 P2d 897 (1987), I am satisfied that respondent

---

[1] The right to communicate does not derive from the Sixth Amendment right to counsel but from the Due Process Clause of the Fourteenth Amendment. *State v. Newton,* 291 Or 788, 802-805, 636 P2d 393 (1981).

[2] Respondent's license was suspended pursuant to *former* ORS 482.541, *former* ORS 482.440 and *former* ORS 487.805. Those statutes were repealed and re-enacted as ORS 813.100 and ORS 813.410 in 1985.

was provided a reasonable opportunity for communication. In *Luth* we stated that the liberty interest of an arrested person to communicate with the outside world, identified in *State v. Newton, supra,*

> "was not a safeguard of the rights to counsel or professional advice under the Fifth or Sixth Amendments; consequently, the focus of the liberty interest is not on the content of the communication but on the fact of whether it is made. In other words, if the communication is not adequate—*i.e.,* advice sought and received—there is no significance *vis-a-vis* the decision not to submit to a breath test." 87 Or App at 140.

Respondent, like the motorist in *Luth,* not only was afforded an opportunity to communicate; he did, in fact, speak to an attorney. According to our decision in *Luth,* the fact that he failed to request the attorney's advice on whether to submit to the breath test has no significance. *Luth v. Motor Vehicles Division, supra,* 87 Or App at 142. Under these circumstances, the issue is not whether a motorist had a reasonable opportunity to communicate; the issue is whether the delay occasioned by his repeated request to speak to a second attorney would unreasonably interfere with the effectiveness of the test.

MVD argues that an adverse impact on the accuracy of the breath test flows inexorably from all delays of the test because of the interaction of two factors that are common to all administrative license suspension cases. First, license suspension is mandated if an arrested motorist's blood alcohol content (BAC) exceeds the legal limit at the time of testing, rather than at the time of arrest. *Former* ORS 487.805(3), like current ORS 813.100(3), mandated suspension of a motorist's driver's license if all other requirements are met and the person's BAC "at the time of test" exceeds the legal limit. *See Heaverin v. Motor Vehicles Division,* 80 Or App 384, 722 P2d 1273, *rev den* 302 Or 159 (1986). The legislature opted for time of testing, rather than time of arrest, because of the many unknowns (such as how much the motorist drank, when he drank it, or his body weight) that can make BAC at the time of arrest different from BAC at the time of the test.[3] As a result,

---

[3] The amendments to the implied consent statutes as originally proposed would have provided that suspension was to be ordered by Division if BAC exceeded the legal limit "at the time of the arrest." This language was amended by the Senate Judiciary Committee to read "at the time of the test." Minutes, Senate Committee on Judiciary, (SB 710), exhibit E, p. 2, April 12, 1983. Senate Amendments to SB 710, by Committee on Judiciary, June 1, 1983, SB 710 A-Engrossed, section 2.

it is inherent in the system designed by the legislature that the BAC of some drivers will be below the legal limit when driving but over the limit when tested (*see Heaverin v. Motor Vehicles Division, supra*), and others will be over the limit while driving and when arrested, but below the limit by the time testing occurs. Those who are over the limit when tested will have their licenses suspended regardless of BAC at the time of driving; those who are below the limit at the time of testing will not, again regardless of BAC at the time of driving.

The fact that the legislature opted for time of testing as the relevant period for administrative convenience should not obscure the fact that the closer the time of testing is to the time of driving, the more accurate the test results will be in identifying the legislatively targeted motorists, those whose BAC was over the legal limit at the time of driving.

Second, physiologically, BAC changes rapidly. In general, BAC increases for some period of time after the last alcoholic beverage is consumed and during absorption, then decreases as the body eliminates the alcohol from the system. *See, e.g., State v. Heintz,* 286 Or 239, 248, 594 P2d 385 (1979); Brent and Stiller, *Handling Drunk Driving Cases,* §§ 3.10-3.11 (1985). Consequently, the BAC of some motorists will be increasing at the time of arrest, and the BAC of others will be decreasing. Due to the very nature of BAC, the longer the delay between the time of the arrest and the time of the test, the less accurate the test will be in identifying the driver who presents the risk that the implied consent system was designed to reach—the driver who was actually over the legal limit at the time of driving. The "highly evanescent" nature of BAC evidence has been repeatedly recognized. *See Moore v. Motor Vehicles Division, supra,* 293 Or at 720; *State v. Newton, supra,* 291 Or at 807; *State v. Heintz, supra,* 286 Or at 248.

I agree with MVD's conclusion that the interaction of this physiological reality with the fact that administrative license suspension results from BAC at the time of testing makes any delay beyond the mandatory 15-minute pretest observation period inconsistent with accurate and effective testing, if the motorist has had a reasonable opportunity to communicate beyond confinement.

Finally, MVD argues that, except for the passage of time with its necessarily adverse impact on the accuracy of the

test,[4] the arresting officer, testifying at the hearing, can never point to any other objective evidence that the effective and accurate administration of the test will be impaired by further delay. A motorist arrested pursuant to ORS 813.100(1), and given a *Miranda* rights notice before being asked to take the test, may choose to stand mute. He may also give inaccurate information regarding how much he drank, when he drank it, and so on. An officer has no way of knowing where on the absorption-dissipation curve the motorist falls and no objective circumstances, beyond delay, to consider as evidence that the effective administration of the test will be impaired.

Thirty-four minutes had passed between the time that respondent was stopped and the time when he completed his telephone conversation with the attorney, was asked to take the breath test and declined. 85 Or App at 269. The officer had no way of knowing whether the BAC was increasing or decreasing and, if it was decreasing, how close he was to slipping below the legal limit (assuming that he had ever been above it). The officer was limited to knowing that time was passing, that BAC was either increasing or decreasing and that the results that would be obtained if the test were taken were growing progressively less likely to correspond to the BAC at the time of driving.

My approach would be to adopt a presumption that any unnecessary delay beyond the observation period will adversely affect the testing process. The presumption, however, may be rebutted. For example, if the motorist volunteers how much he had to drink, over what period of time he drank it and whether he had eaten before drinking, *and* if the officer can independently verify the accuracy of that information, the presumption may be overcome.

As pointed out in *Moore,* the 15-minute pretest observation period provides an opportunity for a motorist to make a telephone call without creating additional and unnecessary delays. *Moore v. Motor Vehicles Division, supra,* 293 Or at 723. If a motorist has had a reasonable opportunity to communicate with the outside world, delays outside of that period are inherently prejudicial to the accuracy of the test.

---

[4] Whenever I refer to "accuracy" of the test in this dissent, I mean accuracy as it relates to the time of driving.

I would withdraw our opinion and reverse and remand with instructions to reinstate the order of suspension.