Argued and submitted October 26, 1990, reversed and remanded with instructions
April 3, 1991

## In the Matter of the Suspension of
### Robert Wayne GREEN,
*Respondent,*

*v.*

## MOTOR VEHICLES DIVISION,
*Appellant.*

(89C-10973; CA A62800)

808 P2d 729

Katherine H. Waldo, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Karlin S. Myers, Salem, argued the cause for respondent. With him on the brief were Neil F. Lathen and Burt, Swanson, Lathen, Alexander & McCann, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Motor Vehicles Division (MVD) suspended petitioner's driver's license on the basis of a breath test. ORS 813.410. Petitioner sought review in the circuit court, which reversed on the basis of the testing officer's failure to allow petitioner to call his mother before the test was administered. MVD appeals, and we reverse.

The facts are undisputed. Petitioner was arrested for driving under the influence of intoxicants. Before the breath test, he asked permission to call his mother. He was not allowed to call before the test, which established his blood alcohol level at .08 percent.

Petitioner requested a hearing on the proposed suspension of his license. At the hearing he argued that he "was entitled to, but was not granted[,] a telephone call prior to being asked to take the breath test * * *." The hearings officer decided:

"The Petitioner's testimony is that the Petitioner requested a telephone call to his mother for a ride home upon release from the testing facility. The officer's testimony, while not as certain as the Petitioner's, does serve to corroborate the Petitioner's testimony that he did make a request for a phone call to secure a ride home prior to the Intoxilyzer test. The Petitioner was concerned with getting a ride in order to report for work later in the morning. The record is void of any evidence that the Petitioner made any claim or request to the officer that the call was to get advice whether or not to take the Intoxilyzer test. The officer took the request at face value and when advising the Petitioner he would allow the call for a ride home after the test, there is no evidence that the officer used any coercive measures associated with his response, nor were there any protestations or hesitations on the part of the Petitioner in proceeding with the Intoxilyzer test. Further, the matter of the Petitioner receiving a ride home from a family member was previously broached in the driveway of the Petitioner's parents' home, the scene of the arrest, with the Petitioner and his mother present.

"There was no causal relationship that could be construed by the officer between the phone call request and the Petitioner's possible decision not to take the test. The purpose of the Implied Consent Law does not purport to allow a Petitioner the opportunity to decide whether or not to take the Intoxilyzer test. The Petitioner offered testimony that this

intent may have been in his mind at the time the phone call was requested. The Hearings Referee rejects this claim as hindsight and wishful thinking after the event.

"Petitioner argues there are no restraints on the phone call request per subsection (f) of the Implied Consent Report * * *, but the actions of the officer were in good faith based upon what he heard from the Petitioner. The Hearings Referee finds that the officer did act in good faith based upon Petitioner's phone call request. The court has held that there has to be a showing of a causal relationship between the denial, or possible denial, of a phone call and the giving of evidence. The driver has the burden to show that if he talked to his mother that he would not have taken the test. The Petitioner failed to do so. *See State v. Newton,* 291 Or 788, 636 P2d 393 (1981)."

The hearings officer also rejected petitioner's other arguments and ordered his driving privileges suspended.

MVD argues that "[t]he circuit court erred in reversing MVD's suspension order on the grounds that petitioner's request to call his mother for a ride home was not honored until after petitioner took the breath test." We review MVD's order, rather than the trial court judgment, for errors of law and substantial evidence. ORS 813.450(4); *Shakerin v. MVD,* 101 Or App 357, 360, 790 P2d 1180 (1990); *Blackman v. MVD,* 90 Or App 408, 412, 752 P2d 1241, *rev den* 306 Or 660 (1988). ORS 813.450(5) provides:

"Upon review, the court shall affirm the division's order unless the court finds a ground for setting aside, modifying or remanding to the division under a specified provision of this section."

The hearings officer's conclusion that the testing officer acted in good faith in failing to allow petitioner to call his mother until after the breath test was based on a finding that the only reason petitioner expressed to the officer for calling his mother was to arrange a ride home. Although not labelled a "finding of fact," the finding was supported by petitioner's testimony that he told the officer that he wanted to call his mother to arrange a ride home and did not mention any other reason. In addition, the officer testified that he "would have probably allowed" petitioner to call his mother before the breath test if he had mentioned that he wanted to talk to her about the test. MVD's order was supported by substantial evidence. *See* ORS 813.450(4)(c).

Citing *Moore v. Motor Vehicles Division,* 293 Or 715, 652 P2d 794 (1982), petitioner argues that the officer's failure to allow him to call his mother before the breath test violated his "right to contact a lawyer, relative, or friend, when under arrest in either a criminal or an administrative proceeding." In *Moore,* the court reviewed five consolidated cases involving driver's license suspension proceedings. In each case, the arrested person, "upon being requested to submit to a breath test, asked or demanded to speak to an attorney." 293 Or at 718. The court discussed the applicability of its holding in *State v. Newton, supra:*

> "*Newton* is distinguishable in that it is a criminal case regarding suppression or admissibility of evidence, whereas these cases present a civil review of the legality of administrative action. Nevertheless, several premises to the *Newton* decision are pertinent here. Most significant was our holding that an arrested person is entitled to communicate with counsel or others and that the police must reasonably accommodate a request to do so unless it would interfere with their duties. The plurality opinion identified the Fourteenth Amendment as the source of this liberty to communicate and the separate opinions looked to other sources, but all members of the court agreed that it exists and that it is subject to reasonable restriction for lawful police purposes." 293 Or at 719.[1]

The court held, among other things:

> "If an arrested person asks to speak to counsel, an unjustified failure to afford reasonable opportunity to do so would be a deprival of the person's liberty, *see Newton.* In that situation, the person's non-submission [to a breath test] (*i.e.,*

---

[1] In *State v. Spencer,* 305 Or 59, 750 P2d 147 (1988), the court revisited its analysis in *Newton:*

"We are not persuaded by the *Newton* plurality's reasons for concluding that the right to seek the advice or assistance of counsel under Article I, section 11, attaches only after a formal charge is filed." 305 Or at 74.

The court held:

"[U]nder the right to counsel clause in Article I, section 11, an arrested driver has the right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." 305 Or at 74. (Footnote omitted.)

The court did not address the *Newton* plurality's conclusion that denial of an arrested driver's request to communicate with counsel before submitting to a breath test may violate the Fourteenth Amendment, because it decided the case under the Oregon constitution. 305 Or at 75 n 4.

refusal) would have resulted from a legally unauthorized procedure. An administratively imposed penalty based on that procedure would be invalid." 293 Or at 723.

The plurality in *Newton* identified an arrested person's liberty interest under the Fourteenth Amendment "to promptly communicate beyond confinement." 291 Or at 807. The court did not restrict that interest to communication for the purpose of legal advice. *Moore v. Motor Vehicles Division, supra,* 293 Or at 719; *State v. Newton, supra,* 291 Or at 806-07. However, if an arrested person asks to communicate outside the place of confinement, failure of the police immediately to allow the person to do so is not necessarily a deprivation of the person's liberty interest. The police need only provide an arrested person with a "reasonable opportunity" to communicate. *Moore v. Motor Vehicles Division, supra,* 293 Or at 719, 723-24; *State v. Newton, supra,* 291 Or at 806-08.

Petitioner requested to call his mother to arrange a ride home, and that was the only reason that he expressed to the officer. Petitioner was not required to state his reason for requesting to call his mother, but he did.[2] The officer told him that he would be allowed to call after the breath test. Petitioner does not argue that he was not allowed to call after the breath test, and there is no evidence that he was not allowed to do so for an unreasonable length of time. Because he did not wish to discuss whether to take the test, there was no reason why he should not wait until after the breath test to call his mother to arrange a ride home. Postponing the phone call until after the breath test did not deprive petitioner of any liberty interest under the Fourteenth Amendment. *See Moore v. Motor Vehicles Division, supra; State v. Newton, supra.*

Reversed and remanded with instructions to reinstate the suspension order in accordance with *Wimmer v. MVD,* 83 Or App 268, 730 P2d 1297 (1986).

---

[2] Nothing in this opinion should be read as approving the referee's statement that "[t]he driver has the burden to show that if he talked to his mother he would not have taken the test."