Argued and submitted on October 19, 2007, reversed and remanded with
instructions to enter order of suspension May 7, petition for review
denied August 6, 2008 (345 Or 175)

In the Matter of the Suspension of
the Driving Privileges of

Chandra BROWN,
*Petitioner-Respondent,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES DIVISION (DMV),
a division of the Department of Transportation,
*Respondent-Appellant.*

Multnomah County Circuit Court
050808088; A130569

185 P3d 459

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Benjamin R. Hartman, Assistant Attorney General.

William Uhle argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

In this case, the Oregon Department of Transportation, Driver and Motor Vehicle Services Division (DMV), appeals the circuit court's judgment setting aside its order suspending petitioner's driver license after she refused to take a chemical breath test following her arrest for driving under the influence of intoxicants (DUII). ORS 813.410 (requiring DMV to suspend the driving privileges of an arrested driver who refuses to submit to a chemical breath test). Although this is an appeal from a judgment of the circuit court, we review the DMV's order for substantial evidence and errors of law. ORS 813.450(4), (5); *Fisher v. DMV*, 203 Or App 202, 204, 125 P3d 85 (2005). The issue on appeal is whether petitioner was afforded a reasonable opportunity to communicate with counsel or others before deciding whether to submit to the breath test. *See Moore v. Motor Vehicles Division*, 293 Or 715, 652 P2d 794 (1982). We reverse the trial court's judgment setting aside DMV's suspension order and remand the case with instructions to enter an order of suspension.

The facts are not in dispute. At approximately 12:45 a.m., petitioner was driving in Portland when she swerved to avoid hitting a small animal with her car, instead hitting a parked car. A resident of a nearby home heard the collision and called the police, and Officer Hensey was dispatched to the scene to investigate. When Hensey arrived, he noticed that petitioner was displaying signs of intoxication. She smelled of alcohol, her balance was unsteady, she leaned on her vehicle for support, and she tripped while trying to step over a curb. The owner of the parked car told Hensey that petitioner seemed drunk when they talked after the accident.

Hensey asked petitioner how much she had had to drink, and she replied that she had had a few glasses of wine. She offered to take field sobriety tests before being asked to do so, explaining to Hensey that she was not drunk. Petitioner's performance on those tests caused Hensey to arrest her in order to charge her with DUII. At 1:23 a.m., Hensey read petitioner her *Miranda* rights, which she indicated that she understood. He waited for a tow truck for petitioner's car and then escorted her to the police station.

During the drive to the police station, petitioner asked Hensey whether she would be permitted to make a phone call. He told her that "we would get to that when we got to processing." When they arrived at the station, Hensey asked petitioner if she wanted to make a phone call. He allowed her to have access to her cell phone, a telephone, and phone books. He did not offer to leave the room and remained about seven feet away from petitioner. Hensey testified at the license suspension hearing that petitioner tried to call someone, but she was not able to reach whomever she called. Petitioner told Hensey that she would continue trying to make a phone call.

At 2:00 a.m., Hensey informed petitioner of the rights and consequences listed on the Implied Consent Combined Report. At the same time he started reading to petitioner, Hensey began the 15-minute observation period that must precede the administration of a breath test. *See* OAR 257-030-0070(2)(a) ("Pre-Test Requirement: * * * [t]he operator [must be] certain that the subject has not taken anything by mouth * * *, vomited, or regurgitated liquid from the stomach into mouth, for at least fifteen minutes before taking the test."). Immediately after reading the form, Hensey asked petitioner if she wanted to make another phone call. Petitioner found the number of her friend, Larsen, in her cell phone directory. After she spoke briefly to Larsen, an attorney who does not practice criminal law, petitioner told Hensey that she wanted to speak with a criminal lawyer.[1] Hensey asked her if she would like to call anyone else, and petitioner told him that she did not know how to contact anyone else.

At 2:20 a.m., Hensey asked petitioner if she would be willing to take a breath test. Hensey testified that petitioner replied, "[N]ot without counsel." Hensey understood that comment to be a refusal to take the breath test. He noted her refusal on the implied consent form, noted that her license would be suspended for one year, and gave her a copy of the

---

[1] Hensey knew that Larsen was petitioner's "friend * * * who * * * is also an attorney," but he testified that petitioner described Larsen as "other than legal counsel."

document, which included an explanation of her right to request an administrative hearing.

Petitioner requested an administrative hearing on her license suspension. At that hearing, she argued that her right to a reasonable opportunity to communicate with counsel or others was unreasonably restricted because Hensey did not permit her to communicate with Larsen in private. *See State v. Durbin,* 335 Or 183, 191, 63 P3d 576 (2003) (state constitutional right to counsel includes the "opportunity for confidential communication"). Reasoning that the right to counsel applies only in criminal proceedings, the administrative law judge (ALJ) concluded that petitioner had been afforded a reasonable opportunity to communicate before deciding whether to take the breath test. *See Gildroy v. MVD,* 315 Or 617, 621, 848 P2d 96 (1993) (the right to counsel does not apply in license suspension proceedings). Accordingly, the ALJ issued a final order affirming the suspension of petitioner's driver's license.

Petitioner sought review of the ALJ's final order in circuit court. She reiterated her argument that her request to contact counsel was not reasonably accommodated. The circuit court reversed the ALJ's decision suspending petitioner's driver's license, reasoning that the suspension was not valid because Hensey did not afford petitioner an opportunity to communicate in private with Larsen. DMV appeals from that judgment, arguing that the ALJ correctly concluded that petitioner was afforded a reasonable opportunity to communicate before refusing the breath test.

We begin by discussing the difference between an arrested driver's right under Article I, section 11,[2] of the Oregon Constitution, to a private conference with counsel in criminal proceedings, and an arrested driver's right under the Due Process Clause of the Fourteenth Amendment to the United States Constitution[3] to a reasonable opportunity to

_____

[2] Article I, section 11, provides, in relevant part:

"**Section 11. Rights of Accused in Criminal Prosecution.** In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

[3] The Due Process Clause provides:

"**Section 1. Citizenship; privileges and immunities; due process; equal protection.** All persons born or naturalized in the United States, and subject

communicate before deciding whether to refuse a breath test and accept a license suspension—rights that are distinct in their content, source, and application. We agree with DMV that the trial court erred by conflating the state constitutional right to confer privately with counsel with the federal constitutional right to a reasonable opportunity to communicate with counsel or others.

The basic concept embodied in Oregon's implied consent law, ORS 813.095 to 813.136, is that one who drives a motor vehicle on the state's highways impliedly consents to a breath test. *See* ORS 813.100. If an arrested driver refuses the breath test, evidence of the refusal may be offered against the driver in a criminal proceeding, ORS 813.130(2)(a), and DMV must suspend the driver's license. ORS 813.410(1).

■ In a criminal matter, evidence of an arrested driver's refusal must be suppressed if the driver requested but was denied a reasonable opportunity to obtain legal advice before deciding whether to submit to the test. *See State v. Spencer*, 305 Or 59, 750 P2d 147 (1988). That is because, in criminal proceedings, Article I, section 11, protects an arrested driver's right to counsel. *Id.* at 74-75. Because of the importance of confidentiality to lawyer-client communications, a driver who invokes his or her right to counsel under Article I, section 11, must be afforded an opportunity to speak *privately* with a lawyer. *Durbin*, 335 Or at 190-91. Unless the state presents evidence that the officer's presence was necessary because further delay would result in the loss of evidence, police must provide privacy even if doing so would require terminating the required observation period. *Id.* at 193-94.

■ In a civil administrative proceeding, such as a license suspension hearing, Article I, section 11, does not apply. *Gildroy*, 315 Or at 621. Accordingly, a driver facing license suspension for refusing to submit to a breath test may not rely on Article I, section 11, to contest the suspension. However, if an arrested driver asks to speak with someone (including but not limited to counsel), the driver "must be

---

to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State * * * shall * * * deprive any person of life, liberty, or property, without due process of law * * *."

afforded reasonable opportunity to do so unless or until it would interfere with effective administration of the [breath] test," including by interrupting the observation period. *Moore,* 293 Or at 723. The police "may lawfully restrict the freedom of an arrested person to communicate to the degree reasonably required for the performance of their duties." *State v. Newton,* 291 Or 788, 807, 636 P2d 393 (1981), *overruled on other grounds by State v. Spencer,* 305 Or 59, 750 P2d 147 (1988). To the extent that an opportunity to communicate would not interfere with the performance of police duties, the failure to accommodate a request to communicate is "a depriv[ation] of the person's liberty" in violation of the Fourteenth Amendment. *Moore,* 293 Or at 723. If the police failed to afford the driver a reasonable opportunity to communicate, the driver's refusal to take the test would have resulted from a legally unauthorized procedure, and an administrative penalty imposed based on that procedure would be invalid. *Id.* at 723-24.

Unlike a criminal proceeding in which the state bears the burden of justifying any restriction on the right to counsel, *State v. Matviyenko,* 212 Or App 125, 129, 157 P3d 268 (2007), in a license suspension proceeding, the driver bears the burden of establishing that his or her opportunity to communicate with counsel or others was unreasonably restricted. *Walls v. DMV,* 154 Or App 101, 107, 960 P2d 888 (1998). A driver cannot show a violation of the Fourteenth Amendment right to a reasonable opportunity to communicate merely by showing that the state interfered in some way with the communication; rather, *the driver* must show that the interference was *unreasonable. Gildroy v. MVD,* 132 Or App 235, 241, 888 P2d 64 (1995). By contrast, if an arrested driver shows that police interfered with his or her Article I, section 11, right to counsel, evidence of his or her refusal will be suppressed unless *the state* shows that the interference was *reasonable.*

That distinction is material to our analysis of this appeal. Article I, section 11, creates an affirmative entitlement that the state must protect, for instance by offering counsel for the indigent. The state, therefore, bears the burden of showing that it fulfilled its obligation to protect that

entitlement. On the other hand, the Due Process Clause of the Fourteenth Amendment protects a liberty interest that

> "is different from entitlement to a right. The state is barred from unlawfully restricting liberty, but it is not obliged to itemize to a person all the actions he is free to take nor to provide an indigent person with the means to exercise his freedom as a precondition to the state's taking action."

*Newton*, 291 Or at 808 (plurality opinion). Accordingly, in a license suspension hearing, a petitioner bears the burden of demonstrating that the state unlawfully restricted her liberty to communicate.

■       With that background in mind, we turn to DMV's appeal. The ALJ found that petitioner was given an opportunity to use a telephone, as well as telephone directories, before Hensey began the 15-minute observation period that must precede administration of the breath test. When an attempt to make a call was unsuccessful, Hensey began the observation period, but he permitted petitioner to continue to use her cell phone. During the next 20 minutes, petitioner was able to communicate with a friend, Larsen. Following that conversation, petitioner indicated her desire to speak to a criminal lawyer, but she stated that she did not know how to contact one and made no attempt to do so, even though she had been previously provided with the means to do so.

Those findings are supported by substantial evidence, and petitioner does not dispute them. Petitioner was clearly afforded an opportunity to communicate with counsel or others, and she in fact did so.[4] She does not argue that she should have been provided with additional time to communicate; she argues only that Hensey unreasonably interfered with her communication by remaining in the room while she spoke to Larsen.

Petitioner urges us to conclude that *Durbin* expanded the Fourteenth Amendment right to a reasonable

---

[4] The right protected by the Fourteenth Amendment is the right to a reasonable opportunity " 'to communicate with counsel *or others.*' " *Gildroy*, 132 Or App at 239 n 2 (quoting *Moore*, 293 Or at 719; emphasis in *Gildroy*).

opportunity to communicate so that police must spontaneously provide privacy during the communication. She reasons that "*Gildroy* * * * held that a private consultation with counsel should be honored if the privacy could be granted without interfering with the effectiveness of the administration of the breath test," and, because *Durbin* clarified that the right to counsel under Article I, section 11, includes the right to a private consultation with an attorney, "a private consultation does not interfere with the effective administration of the test."

We disagree. First, *Gildroy* says nothing about the Fourteenth Amendment requiring police to allow a private conversation. In that case, the Supreme Court explained that a "[p]etitioner's right to consultation while waiting to take the breath test may not interfere with the effective administration of the test," including the required 15-minute observation period. 315 Or at 622. Because the Fourteenth Amendment protects a liberty interest rather than an entitlement, the state has no affirmative obligation to assist petitioner's exercise of that liberty, including by spontaneously providing privacy.[5] *See Gildroy*, 132 Or App at 240; *Ranger v. MVD*, 122 Or App 141, 144-45, 856 P2d 1050 (1993).

Second, although "the fact that an observation period required by rule or statute would have to be terminated is insufficient, standing alone, to justify a violation of defendant's constitutional right to consult with his lawyer privately," *Durbin*, 335 Or at 193, the same cannot be said of the right to a reasonable opportunity to communicate, which must be exercised consistently with the orderly and efficient processing of the case. *See Moore*, 293 Or at 723. In *Durbin*, the Supreme Court held that the state could not satisfy its burden of justifying interference with the right to counsel under Article I, section 11, by relying on the 15-minute observation period. It does not follow that petitioner can satisfy

---

[5] Here, there is no evidence that petitioner requested privacy. Accordingly, we are not called upon to determine whether the Due Process Clause of the Fourteenth Amendment would have required the officer to permit petitioner to speak to Larsen in private upon request. The sole question before us is whether an officer's mere presence while a petitioner exercises her liberty interest in communicating before deciding whether to submit to a breath test amounts to unreasonable interference with that communication. We conclude that it does not.

her burden of showing unreasonable interference simply because the officer did not leave the room.

Whether petitioner was denied a reasonable opportunity to communicate is an objective inquiry that depends on the nature of the officer's interference, if any, with petitioner's conversations and the reasons therefor. *Gildroy*, 315 Or App at 622. Here, Hensey provided petitioner with an opportunity to communicate before the administration of the breath test, and she did so. There is no evidence that the officer's presence interfered with petitioner's ability to communicate with Larsen, let alone evidence that any interference was unreasonable. Accordingly, we reverse the trial court's judgment setting aside DMV's suspension order and remand with instructions to enter an order of suspension.

Reversed and remanded with instructions to enter order of suspension.