Argued and submitted April 1, 2008, reversed and remanded with instructions to enter order of suspension April 1, petition for review denied July 9, 2009 (346 Or 364)

In the Matter of the Suspension of the Driving Privileges of

Garen K. STAGLIN,
*Petitioner-Respondent,*

*v.*

DRIVER AND MOTOR VEHICLE SERVICES DIVISION (DMV),
a division of the Department of Transportation,
*Respondent-Appellant.*

Multnomah County Circuit Court
060403651; A133608

205 P3d 90

Heather A. Vogelsong, Assistant Attorney General, argued the cause for appellant. On the briefs were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kaye E. McDonald, Senior Assistant Attorney General.

John Henry Hingson III argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

■ The Driver and Motor Vehicle Services Division (DMV) appeals a judgment setting aside an order suspending petitioner's driving privileges. We review the order directly for substantial evidence and errors of law. ORS 813.450(4); *Davis v. DMV*, 209 Or App 39, 41, 146 P3d 378 (2006), *rev den*, 342 Or 344 (2007). Because we conclude that DMV provided petitioner with a reasonable opportunity to communicate with counsel and others, we reverse the judgment and remand with instructions to enter an order of suspension.

We take the following facts from the opinion of the administrative law judge (ALJ). Police officers Laws and Sorenson stopped petitioner for violations of traffic laws and observed signs of intoxication. After failing field sobriety tests, petitioner was arrested for driving while under the influence of intoxicants (DUII) and was informed of his *Miranda* rights.

Before being taken to the precinct station, petitioner said that he wanted to speak to a lawyer. At the station, officers placed petitioner in a holding cell, removed his handcuffs, gave him a telephone and a phone book, allowed him to keep his cell phone, and left him alone for 22 minutes. After that, petitioner was handcuffed and taken to the room where the breath testing equipment was located.

Officer Laws began the pretest observation period and provided petitioner with statutorily required information regarding implied consent rights and consequences.[1] At some point during that period, petitioner's cell phone rang, but he was not allowed to answer it. When Laws requested that petitioner submit to the breath test, petitioner expressed uncertainty and, explaining that he had not been able to reach an attorney earlier, asked for more time to call. Laws was concerned about dissipation of evidence and did not want to delay processing by removing the handcuffs and giving

---

[1] Under ORS 813.100(2), no breath test shall be given "if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130." ORS 813.130(2) sets out information that must be provided.

petitioner privacy for more phone calls. Laws denied petitioner's request for further calls, but he and another officer reiterated and explained the rights and consequences information to petitioner.

Thirty minutes after the observation period began, petitioner submitted to a breath test. By that time, one hour and 24 minutes had passed since petitioner's arrest for DUII. The breath test disclosed a blood alcohol content of 0.15 percent.

The ALJ ordered the suspension of petitioner's driving privileges. The ALJ concluded that it was "reasonable for the officers to believe that allowing petitioner a second opportunity for a private conversation would have interfered with the effective administration of the breath test" and that petitioner had failed to prove that the officers acted unreasonably in restricting his opportunity to contact counsel. Rejecting petitioner's argument that allowing more time to call would not have resulted in a significant dissipation of evidence, the ALJ concluded that the argument was speculative, because there was no evidence that providing further time for calls would have caused only minimal delay.

Petitioner sought review in the circuit court, contending that the record did not support the ALJ's finding that he was provided a reasonable opportunity to contact counsel before the breath test. The circuit court reasoned that the right to contact counsel arose when the petitioner was advised of the rights and consequences of the breath test. Because petitioner was not allowed telephone calls at that time, the court concluded, he was denied a reasonable opportunity to contact counsel. The circuit court therefore reversed DMV's order suspending petitioner's driving privileges.

DMV appeals. The issue is whether the police in some way unreasonably interfered with petitioner's liberty interest in communication with counsel and others, so that the license suspension was the result of a legally unauthorized procedure.[2] *Moore v. Motor Vehicles Division*, 293 Or

---

[2] Because this is an appeal from an administrative proceeding to suspend petitioner's driving privileges, this case does not implicate the right to counsel set forth in Article I, section 11, of the Oregon Constitution. *Gildroy v. MVD*, 315 Or 617, 621-22, 848 P2d 96 (1993) (*Gildroy I*); *see also Brown v. DMV*, 219 Or App 607,

715, 723-24, 652 P2d 794 (1982). DMV contends that police did not unreasonably interfere with petitioner's interest in communication, because they allowed him 22 minutes to make phone calls. Petitioner makes two arguments in response, contending first that the right to communicate arises when an arrested driver is asked to submit to a breath test. Thus, he contends, his "limited right to communicate outside the confines of the jail about whether to submit to a breath test was not vindicated by Laws giving petitioner 20 minutes * * * to attempt to contact counsel *before* Laws ever asked petitioner to submit to a breath test." (Emphasis in original.) Because we disagree with petitioner's characterization of the interest in communication, we reject that argument.

■■　The implied consent law does not require that an arrested driver's decision about a breath test be a fully informed decision or that it be made with the advice of counsel. *State v. Spencer*, 305 Or 59, 71-72, 750 P2d 147 (1988). There is, however, a liberty interest in communication with counsel and others, "recognized in [*State v. Newton*, 291 Or 788, 636 P2d 393 (1981), *overruled in part on other grounds by State v. Spencer*,] as the liberty of an arrested person to communicate promptly upon arrest if it does not unreasonably interfere with performance of police duties." *Moore*, 293 Or at 722. *Newton* identified a broad scope of possible topics of communication:

> "Communication may be the means to secur[e] release, advice, reassurance of one's family or associates, or professional assistance. For at least these reasons, allowance of a telephone call following arrest has become traditional and incommunicado incarceration is regarded as inconsistent with American notions of ordered liberty. Freedom of an arrested person to communicate is a significant and substantial liberty which may only be officially restricted if there is legal authority to do so."

291 Or at 807.

---

611-14, 185 P3d 459, *rev den*, 345 Or 175 (2008) (discussing differences between an arrested driver's rights under Article I, section 11, and the due process right to communicate).

■ Accordingly, although an arrested driver must promptly submit to a test on request, that "rule must be applied with a flexible regard for arrested persons' freedom to communicate." *Moore*, 293 Or at 722. The *Moore* court explained:

> "We hold that if an arrested person, upon being given the advice required by ORS 487.805(2)(a) and (b), [3]does not submit promptly to the request, his non-submission is a refusal. We further hold that if the person requests to speak with an attorney, the request itself is not a refusal and the person must be afforded reasonable opportunity to do so unless or until it would interfere with effective administration of the test. For example, a person might be given opportunity to call during the 15-minute observation period without affecting the validity of the test. If a person requests to communicate and is afforded a reasonable opportunity to do so, consistent with the temporal requirements of the testing process, and the person does not submit to the test, that is a refusal.
>
> "If an arrested person asks to speak to counsel, an unjustified failure to afford reasonable opportunity to do so would be a deprival of the person's liberty, *see Newton*. In that situation, the person's non-submission (*i.e.*, refusal) would have resulted from a legally unauthorized procedure. An administratively imposed penalty based on that procedure would be invalid."

293 Or at 723-24.

*Moore* addressed the liberty of an arrested person to communicate with counsel and others and clarified when a person might be said to have refused a test. Contrary to petitioner's position, *Moore* did not hold that the liberty to communicate arises only after an arrested driver is asked to take a breath test. Indeed, such a limitation would be inconsistent with *Moore*'s view of that liberty interest.

Although petitioner cites several of this court's cases in support of his argument, none of those cases aids him. For example, plaintiff relies on *Morgan v. MVD*, 85 Or App 267, 270, 736 P2d 580, *recons den*, 87 Or App 635, 743 P2d 774, *rev*

---

[3] In the current version of the vehicle code, ORS 813.130 establishes the information that must be provided about rights and consequences.

*den,* 304 Or 311 (1987), where we stated that *Moore* "held that a motorist has a constitutional right to consult with someone outside the confines of the jail after being requested to submit to a breath test." Petitioner reads too much into that summary of *Moore.* Nothing in *Morgan* turned on whether the right to communicate arose after the petitioner was asked to submit to a breath test; the statement on which petitioner relies is, at most, *dictum* for the proposition he cites.

In *Morgan,* the petitioner was arrested for DUII at 6:08 p.m., arrived at the jail at 6:29 p.m., and tried to contact his attorney, Olson, at 6:40 p.m. Although his efforts were unsuccessful, at 6:42 p.m., he reached another lawyer and asked her to have Olson call him. An officer then asked the petitioner to take the breath test, and the petitioner responded that he wanted to speak to his attorney first. At 6:49 p.m., Olson's partner called the petitioner, advised him to take the test, and told the officer that the petitioner would submit. The officer, believing that the petitioner had already refused, did not allow him to be tested. *Morgan,* 85 Or App at 269-70. The petitioner thus was given less than 10 minutes to try to contact his lawyer, and his attempt to submit to the breath test came only about 40 minutes after he was arrested. We noted that the trial court effectively had found "that the delay involved would not have affected the validity of the test at the time [petitioner] agreed to take it. Under these circumstances, * * * the officer's refusal to permit petitioner to take the breath test was unjustified and deprived petitioner of his liberty." *Id.* at 271 (citing *Moore*). Our decision in *Morgan* thus depended on the brevity of the opportunity to communicate that was afforded the petitioner, not on whether the opportunity to communicate was provided before the request to submit to a test. *Cf. Farley v. MVD,* 137 Or App 492, 905 P2d 248 (1995), *rev den,* 323 Or 114 (1996) (the petitioner had a reasonable opportunity to communicate where he asked his wife to contact an attorney for him and declined offers to call other attorneys; refusal to test was declared over an hour after his arrest and about 10 minutes after he asked his wife to call his attorney).

Petitioner also relies on *Green v. MVD,* 106 Or App 471, 808 P2d 729 (1991). According to petitioner, that case

establishes that the liberty interest in communication must relate to the decision whether to take the breath test and, therefore, can arise only after a request to submit to the breath test. We read *Green* differently.

In *Green*, a police officer did not honor the petitioner's request for a phone call until after the breath test; the petitioner contended that he should have been allowed to call before the test. The petitioner had volunteered to the officer, however, that he wished to call his mother to arrange a ride home. We reasoned, "Because he did not wish to discuss whether to take the test, there was no reason why he should not wait until after the breath test to call * * *. Postponing the phone call until after the breath test did not deprive petitioner of any liberty interest under the Fourteenth Amendment." 106 Or App at 476 (citations omitted). We did not hold that communication must concern the breath test. Indeed, we noted that the Supreme Court, in *Moore* and *Newton*, did not restrict the liberty interest "to communication for the purpose of legal advice." *Green*, 106 Or App at 476. We simply concluded that the communication may be delayed under some circumstances, so long as the arrested person is provided a "reasonable opportunity" to communicate. *Id.*

Finally, petitioner relies on *Gildroy v. MVD*, 132 Or App 235, 888 P2d 64 (1995) (*Gildroy II*). He contends that the liberty interest protects communication about the breath test only, because, under *Gildroy II*, "a police officer may properly restrict the limits and content of the communication with counsel by commanding, 'Let's keep this pertaining to business,' *viz.*, the 'business' being advice about whether to take the breath test instead of 'the activities of the day.' " (Quoting *Gildroy II*, 132 Or App at 237, 238.)

Our decision in *Gildroy II* came after the Supreme Court remanded for agency factfinding about whether the petitioner had had a reasonable opportunity to communicate with counsel. *Id.* at 237. The dispute on appeal concerned the fact that, while the petitioner called his attorney, a police officer remained in earshot and interrupted with the comment quoted by petitioner here. *Id.* at 238. The petitioner contended that the lack of privacy interfered with his ability to communicate with his lawyer. *Id.* at 240. We rejected that

argument in light of the Supreme Court's earlier decision in the same case holding that privacy was not required for the liberty interest in communication. *Id.* (citing *Gildroy v. MVD*, 315 Or 617, 848 P2d 96 (1993) (*Gildroy I*)). Nothing in *Gildroy II* suggests that the liberty interest is limited to seeking advice about a breath test.

In short, the case law does not support petitioner's contention that the liberty to communicate arises only after an arrested driver is asked to submit to a breath test and that providing an opportunity to communicate before the request for submission fails to protect that liberty. Rather, the liberty interest in communication is the interest of an arrested person. *Moore*, 293 Or at 722. The mere fact that petitioner requested and was given a reasonable opportunity to call *before* he was asked to submit to the breath test is insufficient to show unreasonable interference with his liberty interest. We therefore reject petitioner's arguments that depend on a contrary premise.

■■ We turn to petitioner's second argument, that allowing more time for calls would not have interfered with effective administration of the test and that police unreasonably denied his right to communicate by failing to allow more time. In a license suspension proceeding, the driver has the burden to prove that his opportunity to consult with an attorney was unreasonably restricted. *Walls v. DMV*, 154 Or App 101, 107-08, 960 P2d 888 (1998).

Petitioner contends that further opportunity to call would not have interfered with the test. In his view, he could have been allowed to make calls during the pretest observation period while an officer remained in the room. Although the lack of privacy would have precluded use of the test as evidence in a criminal proceeding, it could have been used in an administrative proceeding. Petitioner contends that *Moore* required that he be allowed to continue his attempts to communicate "unless or until [the communication] would interfere with effective administration of the test," 293 Or at 723, and he was not allowed to continue his opportunity to that point.

We do not believe that *Moore* requires a greater opportunity for communication than petitioner received here.

*Moore* noted that prompt submission to the breath test is the rule, although that rule "must be applied with a flexible regard for arrested persons' freedom to communicate." *Id.* at 722. Petitioner relies, however, on *Moore*'s reference to affording reasonable opportunity for communication "unless or until it would interfere with effective administration of the test," *id.* at 723, to argue that the freedom to communicate continues until it would interfere with the test.

Petitioner puts more weight on that phrase than it will bear. His interpretation of *Moore* would effectively reverse the "rule" and the "flexible regard," and make communication the "rule" that is applied with regard for the test itself. We do not read *Moore*, as petitioner does, to require that the opportunity to communicate extend so long as the opportunity does not interfere with administration of the test. Rather, *Moore* requires "a reasonable opportunity" to communicate:

> "For example, a person might be given opportunity to call during the 15-minute observation period without affecting the validity of the test. If a person requests to communicate and is afforded a reasonable opportunity to do so, consistent with the temporal requirements of the testing process, and the person does not submit to the test, that is a refusal."

293 Or at 723. A 15-minute opportunity to call thus may satisfy the liberty interest in communication. *Cf. State v. Durbin*, 335 Or 183, 193, 63 P3d 576 (2003) (in the DUII context, where an arrested driver has an Article I, section 11, "right to a reasonable opportunity to consult privately with counsel," a 15-minute opportunity "normally will be sufficient for a person to contact and consult with a lawyer after that person invokes the right to counsel").

■ *Gildroy I* is consistent with that view of *Moore*. In *Gildroy I*, the court explained:

> "Petitioner's right to consultation while waiting to take the breath test may not interfere with the effective administration of the test. *See Moore*[, 293 Or at 723] (consultation must be consistent with the temporal requirements of the testing process).
>
> "Petitioner had a right to a reasonable opportunity to communicate with his lawyer, where that conversation

would not be inconsistent with the effective administration of the breath test. *Id.*"

315 Or at 622. In other words, the reasonable opportunity may not continue past the point that it would interfere with effective administration of the test; it need not be extended as indefinitely as petitioner contends.

Accordingly, as we have recognized in other cases, the liberty interest in communication with counsel and others is satisfied if a driver is provided *a* reasonable opportunity to communicate. For example, in *Hicks v. MVD*, 132 Or App 474, 476-77, 888 P2d 1089 (1995), where the petitioner contended that he should have been allowed to wait to take the breath test until his friend arrived at the police station, we explained:

> "There is a refusal to take the test if a person asks to communicate, is afforded a reasonable opportunity to do so consistent with the temporal requirements of the testing process and does not submit to the test. *Moore* * * *, 293 Or at 723. Here, *petitioner was given an opportunity to communicate with his friend, and he did so by telephone. His desire to simply wait until his friend arrived before taking the test has nothing to do with his right of communication. That right had been satisfied. Morgan* does not permit a driver to stall. Blood alcohol dissipates in a short time. Given the highly evanescent nature of the evidence, and the fact that almost an hour and a half had passed since petitioner's arrest, the hearings officer did not err in holding that petitioner's insistence on waiting until his friend arrived constituted a refusal. *See Gildroy v. MVD*, 132 Or App 235, 888 P2d 64 (1995)."

(Footnote omitted; emphasis added.) Likewise, in *Walls*, we rejected the petitioner's argument that the police should have allowed him more time for calls because, after making calls during a 25-minute period, he had not yet been able to reach a lawyer. We noted that almost one and one-half hours had passed since the petitioner's arrest and nothing indicated to the police officer that allowing more time would have resulted in success in contacting an attorney: "All the law requires is that he be given a 'reasonable opportunity' under all the circumstances. In light of the fact that blood alcohol dissipates over time, there is no requirement that a motorist

be furnished an unending opportunity to obtain legal advice about taking a breath test." 154 Or App at 108.

In short, under *Moore*, an arrested driver is entitled to a reasonable opportunity to communicate so long as that reasonable opportunity does not interfere with effective administration of the test. Petitioner here was given such an opportunity when he was given 22 minutes to try to call counsel. Although a further opportunity to communicate might not have interfered with the test, *Moore* does not require endless opportunities to communicate so long as they do not interfere with test administration. Because petitioner was given a reasonable opportunity to communicate, no further opportunity was required.

Reversed and remanded with instructions to enter order of suspension.