In the Matter of the Suspension of
the Driving Privileges of

MARVIN D. FARLEY,
*Respondent,*

*v.*

MOTOR VEHICLES DIVISION,
*Appellant.*

(94-CV0024-15; CA A85553)

905 P2d 248

Janie M. Burcart, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Robert Thuemmel argued the cause for respondent. With him on the brief was Thuemmel & Uhle.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

## LEESON, J.

■    Motor Vehicle's Division (MVD) appeals from a judgment of the circuit court reversing MVD's suspension of petitioner's driving privileges for refusing to submit to a chemical breath test. We review MVD's order for substantial evidence and errors of law, ORS 813.450(4); *Warner v. MVD*, 126 Or App 164, 166, 868 P2d 6 (1994), and reverse.

At approximately 5:00 a.m., on March 15, 1994, Officer Azbill of the Prineville Police Department stopped petitioner, who was driving a pickup truck in an erratic manner. After administering some field sobriety tests, Azbill arrested petitioner for driving under the influence of intoxicants, ORS 813.010, and transported him to the county jail. Azbill began conducting an alcohol interview report and pre-breathalyzer test observation at 5:42 a.m. At about 5:49 a.m., petitioner asked to talk to his Portland attorney, but he did not know the attorney's telephone number. Azbill offered to contact a local attorney, but petitioner replied that he wanted to talk to his own attorney. Azbill then advised petitioner of his rights and the consequences of a refusal to take a breath test and asked petitioner if he would take the test. Petitioner responded that he wanted to speak with his attorney and Azbill offered to dial that telephone number. Petitioner asked Azbill instead to dial petitioner's home telephone number so that petitioner could talk to his wife. Azbill did so, and at about 5:58 a.m. petitioner asked his wife to contact his attorney and to have the attorney call him at the jail. Their conversation lasted approximately two minutes, immediately after which Azbill again asked petitioner if he was willing to take a breath test to determine the alcohol content of his blood. Petitioner responded that he wanted to wait until he had consulted with his attorney and insisted that he was not refusing to take the test. Azbill again offered to make a telephone call to petitioner's attorney. Petitioner responded that "[i]t's being taken care of." Azbill once more told petitioner that petitioner could call a local attorney and that Azbill would provide a list of local attorneys and their telephone numbers. Petitioner declined, saying that he wanted to wait for his Portland attorney to return his call. At approximately 6:08 a.m., Azbill advised petitioner that he had been

given an adequate opportunity to take the breath test and declared that petitioner had refused to take the breath test.

MVD suspended petitioner's driving privileges based on the implied consent law, which provides that a motorist impliedly consents to take a chemical breath test if the motorist is arrested by an officer who has probable cause to believe that the motorist has been driving under the influence of intoxicants. ORS 813.100(3); *Moore v. Motor Vehicles Division*, 293 Or 715, 718, 652 P2d 794 (1982). A refusal to submit to the test subjects the motorist to suspension of driving privileges. ORS 813.100(3). The hearings officer found that petitioner's attorney called the jail and spoke with Azbill approximately one hour after Azbill had concluded that petitioner had refused the breath test, that Azbill told petitioner several times that he could call a local attorney and that the elapsed time between Azbill's request that petitioner take a breath test and his conclusion that petitioner had refused was 12 minutes. The hearings officer concluded that petitioner had been afforded a reasonable opportunity to communicate with counsel and ordered petitioner's driving privileges suspended for refusing the breath test.

The circuit court reversed on the ground that, "under these unusual circumstances, waiting less than a minute before taking a refusal following a conversation with [petitioner's] wife * * * is not adequate under Oregon law or under the Oregon Constitution."

On appeal, MVD contends that, in the context of an MVD suspension hearing, petitioner's call to his wife, followed by Azbill's offer to call a local attorney, satisfied petitioner's liberty interest under the Fourteenth Amendment to the United States Constitution and that petitioner was given a reasonable opportunity to communicate with his attorney. Petitioner responds that it would not have unreasonably interfered with the effective administration of the breath test if Azbill had waited a few minutes after petitioner called his wife and, therefore, that he was not afforded a reasonable opportunity to communicate.

A request by a person arrested for driving under the influence of intoxicants to talk to an attorney before deciding to submit to or refuse to take a chemical breath test is not, by

itself, a refusal. *Moore*, 293 Or at 723. The Supreme Court has held that, in a civil action to suspend driving privileges, a person has

> "a right to a reasonable opportunity to communicate with his lawyer, where that conversation would not be inconsistent with the effective administration of the breath test." *Gildroy v. MVD*, 315 Or 617, 622, 848 P2d 96 (1993).

Whether petitioner was afforded a reasonable opportunity to consult with an attorney depends on the nature and reasons for any interference with that right. *Id.* However, the Supreme Court has also recognized that blood alcohol is "highly evanescent evidence" that begins to dissipate shortly after drinking stops, and therefore, that a driver must be tested as soon as practicable. *State v. Milligan*, 304 Or 659, 666, 748 P2d 130 (1988); *State v. Heintz*, 286 Or 239, 248, 594 P2d 385 (1979).

In this case, over an hour had elapsed from the time Azbill stopped petitioner to the time that Azbill recorded the refusal. Although Azbill asked petitioner to take the breath test only moments after petitioner's request to his wife that she contact his attorney, the record shows that he did not declare a refusal for another eight minutes. During that time, petitioner refused Azbill's offers to place a call to petitioner's attorney and to place a call to a local attorney from a list available at the jail. Petitioner was given a reasonable opportunity to communicate.

Reversed and remanded with instructions to reinstate MVD's order of suspension. *Wimmer v. MVD*, 83 Or App 268, 730 P2d 1297 (1986).