Argued and submitted September 19, reversed and remanded for trial
November 15, 1995, petition for review denied June 25, 1996 (323 Or 484)

# STATE OF OREGON,
*Appellant,*

*v.*

# LAURA JOANNE BRAZIL-KAY,
*Respondent.*

(TC94-10700; CA A86123)

907 P2d 1116

Kaye E. Sunderland, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Adam Dean, Certified Law Student, argued the cause for respondent. With him on the brief was Des Connall.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

The state appeals a pre-trial order suppressing the results of defendant's breath test for blood alcohol. ORS 138.060(3). We reverse.

On March 2, 1994, at 1:45 a.m., Officer Senger of the West Linn Police Department stopped defendant's vehicle for speeding. During the encounter, Senger detected a strong odor of alcohol coming from the vehicle. He also noticed that defendant's eyes were red and watery and that her speech was thick and slurred. Senger asked defendant if she had been drinking, and she responded that she might have had "a couple." Senger asked defendant to perform field sobriety tests, but she refused to do so unless her attorney was present. Senger advised defendant of the statutory consequences of refusing to perform field sobriety tests, ORS 813.136,[1] and then asked her again if she would perform the tests. Defendant repeated that she would not perform the tests unless her attorney was present. Senger then arrested defendant for driving under the influence of intoxicants. ORS 813.010.

Senger took defendant to the police station and booked her at 2:05 a.m. He testified that because defendant had mentioned during the stop that she wanted her attorney present, he directed her to a telephone. Defendant called her father at 2:15 a.m. and talked with him until 2:30 a.m. During that conversation, she asked him to contact an attorney who would call her at the jail. Senger began his 15-minute pre-test observation period at the same time that defendant called her father. Senger stood near her during the entire conversation and knew that she was asking her father to call an attorney. At the suppression hearing, defendant testified that when she finished her call to her father, she told Senger, "That phone is going to ring right back, and it's going to be for me." Senger testified that after defendant hung up, she told him that there might be an incoming call for her. Senger acknowledged that

---

[1] ORS 813.136 provides:

"If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants."

*But see State v. Fish*, 321 Or 48, 893 P2d 1023 (1995).

he knew that defendant was expecting a call. The trial court found, however, that Senger was not told that the call would be coming in immediately:

> "Now certainly the officer need not be clairvoyant and may not and need not read the defendant's mind as to how long it might take for this call to come in, which I believe was not ever indicated to the officer that, you know, this was going to be immediate, because, of course, the defendant wouldn't have had any way of knowing whether or not it would be immediate, because it all hinged upon the ability of the father to find a lawyer, and that lawyer actually be convinced that they should make a call to the jail to talk to the defendant. So there was no real ability on her part to say whether it would be one minute or 30 minutes or, in fact, if no call would come at all."

After the defendant ended the call with her father, Senger directed her to the intoxilyzer room. She took the breath test at 2:34 a.m. After she finished taking the test, another officer entered the room and informed her that she had a call waiting for her.[2] Defendant took the call on the same telephone from which she had called her father. The call was from an attorney.

Before trial, defendant moved to suppress the evidence of the breath test result on the ground that Senger violated her right, under Article I, section 11, of the Oregon Constitution,[3] to a reasonable opportunity to consult with an attorney before taking the breath test. The trial court found that the officer knew to whom defendant was talking on the phone and that the officer "understood the purpose of that call and what the call was designed to do." As noted above, the trial court also found that defendant did not tell Senger when she expected an attorney to call her at the jail. However, the trial court concluded that Senger, by not delaying the administration of the breath test, denied defendant a reasonable

---

[2] At the suppression hearing, defendant testified that she was informed of the waiting call immediately after taking the breath test. Senger testified that she did not receive a call while he was at the jail. Senger testified, on cross-examination, that he left the jail five to ten minutes after administering the breath test. The trial court did not make any findings on that issue.

[3] Article I, section 11, of the Oregon Constitution provides, in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel."

opportunity to consult an attorney before taking the breath test:

> "[Senger] testified that he was utilizing this period of time between 2:15 and 2:30 as the fifteen-minute observation time, which would be utilized to support then the administration of an intoxilyzer test immediately thereafter, which is what took place.
>
> "Now, if we think about what that means, then that means, in essence, that there has been no delay at all in the administration of the test by virtue of affording * * * the defendant here an opportunity to call a lawyer. Now the cases have all suggested that, in fact, a reasonable opportunity would normally encompass at least some delay in the test * * *. Now, so here we start at the position that there is none. The officer has used that 15 minutes for the observation, so essentially we've lost no time at all in the process of administering the test.
>
> "[T]here's no testimony that there would be any need to renew any observation time of the defendant prior to the test or that there would be any additional impediment to an effective administration of the test, if there were a period of some time allowed to see whether or not the defendant in making this effort to have an attorney call was successful.
>
> "So, * * * in my view, * * * there had to be some delay, some waiting period, to provide an opportunity for a return call to be made so that the defendant would be able to talk with an attorney. * * * So, the result, then, of the intoxilyzer will be suppressed for that reason."

■ The state assigns error to the trial court's order suppressing the breath test results. We review for errors of law. *State v. Greenough*, 132 Or App 122, 887 P2d 806 (1994). Under Article I, section 11, of the Oregon Constitution, an arrested driver has the right, upon request, to a reasonable opportunity to obtain legal advice before taking a breath test. *Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988). A violation of that right warrants suppression of the breath test results. *Id.* at 76.

■ The trial court premised its holding on the proposition that that right required the state to wait some additional period before the breath test was administered. The state argues that it is not necessary to delay the administration of the breath test to accommodate a DUII suspect's right to a

reasonable opportunity to consult with an attorney before taking the breath test. We agree. Under *Spencer*, a DUII suspect's Article I, section 11, right to an attorney is limited to "a *reasonable* opportunity to obtain legal advice before deciding whether to submit to a breath test." *Id.* at 74-75 (emphasis supplied). The limited right to counsel allowed by the court in *Spencer* is an attempt to balance a suspect's right to an attorney against the state's interest in collecting evanescent blood alcohol evidence:

> "The evanescent nature of the evidence the police seek to obtain may justify substantially limiting the time in which the person may exercise his or her Article I, section 11 right, but it does not justify doing away with it.

> "Because evidence of an arrested driver's blood alcohol dissipates over time, the state is not required to wait for long period of time before administering the test. As both *Scharf* and *Newton* recognized, however, permitting the arrested driver to attempt to contact an attorney does not necessarily result in the loss of evidence." *Id.*

The determination of whether that balance has been properly struck will depend on the facts of each case. Accordingly, we have not adopted a *per se* rule that requires the state to delay, by at least some amount of time, the administration of the breath test beyond the 15 minute observation period. *See State v. Penrod*, 133 Or App 454, 458, 892 P2d 729 (1995) (recognizing that the observation period may coincide with a DUII suspect's consultation with counsel). The trial court's reasoning that a reasonable opportunity to consult counsel must include some delay beyond the observation period was incorrect.

■    The state next argues that, under the circumstances here, defendant was not denied a reasonable opportunity to consult with an attorney before taking the breath test. We agree. In *State v. Larrett*, 127 Or App 139, 871 P2d 1016 (1994), and in *Greenough*, we considered whether the defendants were denied a reasonable opportunity to contact an attorney for advice regarding whether to take the breath test. In *Larrett*, the defendant asked to call her attorney during the 15-minute observation period required for the breath test. The officer gave her two telephone directories and, when she could not find the number, asked her if she wanted to call

directory assistance. The defendant declined the officer's offer, but asked if she could call her grandmother to get the phone number. The officer allowed her to do so and wrote down her attorney's number as she recited it to him. The defendant called her attorney and left a message on an answering machine. When the defendant finished her phone call, the officer told her that he was going to administer the breath test in three minutes. The officer offered the defendant additional time in which to contact another attorney, but she declined. She then refused to take the breath test. The trial court granted the defendant's motion to suppress her refusal on the ground that she was denied a reasonable opportunity to contact her attorney. We reversed, explaining:

> "After she asked to call her attorney, the deputy provided her with two telephone directories, offered to help her call information and allowed her to call her grandmother for the attorney's number. Defendant then called her attorney. She never explained to the officer that she had reached an answering service or whether she expected a return call. She made no requests for further delay and specifically declined the offer for additional time to contact another attorney.

> "[The defendant] was provided ample assistance over a reasonable period of time — almost one-half hour — to obtain legal advice, but simply had not been able to reach her attorney. *Spencer* requires a reasonable *opportunity* to obtain legal advice, and defendant received that opportunity. The trial court erred in suppressing evidence of defendant's refusal to take the breath test." 127 Or App at 142-43 (emphasis in original).

In *Greenough*, before taking the breath test, the defendant asked to speak to his lawyer-friend who lived in California. The defendant knew only the attorney's name and telephone area code number. After obtaining the number from directory assistance, the officer called the attorney but reached a recording stating that the number had been changed. The officer called the new number and left a message on the attorney's answering machine stating that the defendant needed assistance and requesting a return call. The officer also unsuccessfully tried to obtain the attorney's home phone number. The officer's attempts took 15 minutes. When the officer told the defendant that he could not reach his friend, the defendant stated that he wanted to talk only to

that attorney. The defendant did not ask to call another attorney, although he was aware of a telephone and directories present in the interview room. He then refused to take the breath test. The trial court suppressed the defendant's refusal to take the test on the ground that he was denied a reasonable opportunity to consult with his attorney. We reversed, concluding:

"When asked, [the officer] made reasonable efforts to contact defendant's lawyer-friend. [The officer] called directory assistance, called the number he was given, called the lawyer's forwarding number and left a detailed message. [The officer] also attempted to obtain a home telephone listing for the lawyer. When [the officer] reported to defendant.that he had been unsuccessful in contacting the lawyer-friend, defendant made no other request. [The officer] did *everything* that defendant asked.

"That defendant did not make a reasonable effort to contact an attorney does not mean that he was denied a reasonable opportunity to do so." 132 Or App at 125-26 (emphasis in original).

As *Larrett* and *Greenough* illustrate, the dispositive issue is not whether defendant was successful in contacting an attorney, but whether she had a reasonable *opportunity* to do so. Although Senger did not assist defendant as much as the officers in those cases, we conclude that he did afford defendant a reasonable opportunity to contact an attorney. On his own initiative, Senger gave defendant access to a telephone from which she could have called an attorney. Instead, defendant called her father and spoke to him for 15 minutes without interruption. Senger knew that she wanted her father to persuade an attorney to call her at the police station, and he also knew that she was expecting a return call. However, as the trial court found, defendant did not tell Senger when she expected that call. Moreover, there is no evidence that she told Senger that the call would be from an attorney. After talking to her father, defendant did not ask to place another call and did not protest when asked to take the breath test. The fact that an attorney may have called after the breath test is irrelevant. As we stated in *Larrett*:

"The trial court found significant the fact that defendant's attorney called the jail within a short period of time. There was no evidence that the call was received before

defendant refused to take the test. The fact that the attorney called is therefore irrelevant to the inquiry of whether defendant had a reasonable opportunity to contact an attorney *before* deciding whether to take the breath test." 127 Or App at 143.

We conclude that, under the circumstances here, defendant was given a reasonable opportunity to consult with an attorney before taking the breath test. *Accord Farley v. MVD*, 137 Or App 492, 905 P2d 248 (1995). The fact that she did not make better use of that opportunity does not mean that it was denied her. *Greenough*, 132 Or App at 126. Accordingly, the trial court erred in suppressing the results of her breath test.

Reversed and remanded for trial.