Argued and submitted September 5, affirmed October 30, 1996

# STATE OF OREGON,
## *Appellant,*

*v.*

# DOUGLAS ALLEN LOWE,
## *Respondent.*

## (95-CR-0840-M; CA A90073)

926 P2d 332

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Carl W. Hopp, Jr. argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

In this driving under the influence of intoxicants (DUII) case, the state appeals from pretrial orders suppressing evidence of defendant's performance on field sobriety tests and the results of an Intoxilyzer test. ORS 138.060(3). The narrow question before us is whether defendant consented to the field sobriety tests. The trial court concluded that he did not. We affirm.

At approximately 1:00 p.m. on September 7, 1994, while on uniformed patrol duty in a marked patrol car, Deschutes County Deputy Sheriff Penzenik saw defendant's car make a right turn at an intersection and noticed that, as it turned, the car crossed over the center line of the road by approximately one foot. Penzenik followed the car for about a mile and then stopped it for the traffic infractions of making an improper turn and failing to drive to the right. When Penzenik asked defendant, who was the driver and sole occupant of the car, for his driver's license, Penzenik smelled a moderate odor of alcohol on defendant's breath. Because of the odor, Penzenik kept defendant's license and had him step out of the car. At the suppression hearing, Penzenik testified as follows:

"Mr. Penzenik: I don't recall if he had the car running or not, but I had him—if he had the car running, I had him shut it off, but I don't recall that. But I did have him step out of the vehicle and I then started to proceed [*sic*] to him, that I was—wanted him to take a series of coordination tests because I had—I could tell he had been drinking and I wanted to give myself a better idea of his ability to operate his vehicle.

"[Counsel]: How did you ask him out of the vehicle and get him out of the vehicle?

"Mr. Penzenik: Probably just, 'Could you step out of the car, please?' or something like that. I might have said, 'Mr. Lowe, would you please step out of the car so I can talk to you?' Something like that."

Penzenik also testified that once he had taken possession of defendant's license, defendant was not free to leave.

Penzenik did not advise defendant of his *Miranda* rights before administering the field sobriety tests, nor did he

tell defendant of the consequences of refusing to take the tests. ORS 813.135; ORS 813.136. Penzenik testified that defendant did not object to taking the tests or refuse to take them. Penzenik did not recall that defendant "said anything" about taking the tests:

> "I did not have to—* * * the only problem I had with him was starting his tests prior to me explaining. I didn't have to coax him into taking them or anything like that."

Defendant testified that he felt he had "been ordered out of [his] car." He also testified that he had read the State of Oregon driver's manual and was aware that if he refused to take the field sobriety tests, his refusal could be used against him in court. Consequently, defendant testified, he felt that he had no option but to perform the tests or have the refusal used against him.

Based on defendant's performance on the field sobriety tests, Penzenik formed the opinion that defendant had been driving under the influence of intoxicants and arrested him for that offense. ORS 183.010. Subsequently, Penzenik administered an Intoxilyzer test. Before trial, the court granted defendant's motion to suppress the results of the field sobriety and Intoxilyzer tests.[1] It found that "the officer had [defendant] step out of the car and perform field sobriety tests" and concluded that "there was no consent to take the test[s]." In its determination that defendant did not voluntarily consent to take the tests, the court "particularly" considered that defendant was not advised of his *Miranda* rights or his right to refuse to consent to taking the tests, that defendant thought he had to take the tests, and that defendant was in an atmosphere which, to the average person, would seem similar to custody.[2]

---

[1] Initially, the trial court entered an order allowing defendant's motion to suppress the field sobriety tests but denying his motion to suppress derivative evidence. In response to a motion to reconsider, the court granted defendant's motion to suppress the Intoxilyzer test results, noting that the field sobriety test results should not have been considered in determining whether there was probable cause for defendant's arrest and that the remaining evidence of defendant's intoxication did not provide Penzenik with probable cause to arrest him. On appeal, the state's only contention with respect to the Intoxilyzer test is that the results are admissible if the field sobriety tests were lawfully obtained.

[2] The trial court also noted that it relied on defendant's recollection that Penzenik told him that if he refused to take the tests his refusal could be used against

The state assigns error to the trial court's grant of defendant's motion to suppress, arguing that "[t]he reasons expressed by the trial court for concluding that the consent was involuntary are inadequate as a matter of law." It contends that defendant was not in a situation where advice of *Miranda* rights or the right to refuse to consent to taking the tests was required. It further contends that, although "observing defendant's performance of the tests may have been a search under *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994), it was a lawful search pursuant to the 'voluntary consent' exception to the search warrant requirement." Defendant responds that the trial court did not err in granting his motion to suppress, because the state failed to meet its burden of proving valid consent by a preponderance of the evidence. He contends that he merely acquiesced in Penzenik's authority and did not voluntarily consent to perform the tests.

Because field sobriety tests are a search, an officer must either have a search warrant or administer the tests under the authority of a recognized exception to the warrant requirement. *Id.* at 31. Consent is an exception to the warrant requirement. *State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994). Under that exception, the state must show by a preponderance of the evidence that defendant voluntarily consented to perform the tests. *State v. Maddux*, 144 Or App 34, 38, 925 P2d 124 (1996). Mere acquiescence in an officer's lawful authority does not constitute consent. *State v. Freund*, 102 Or App 647, 652, 796 P2d 656 (1990).

We are bound by the trial court's findings of historical fact if they are supported by the evidence, but we assess anew "whether the facts suffice to meet constitutional standards." *State v. Stevens*, 311 Or 119, 135, 806 P2d 92 (1991). In assessing voluntariness, we examine the totality of the circumstances to determine whether defendant's consent was given "by an act of free will or was the result of coercion, express or implied." *State v. Parker*, 317 Or 225, 230, 855 P2d

him in a court of law. The state is correct that this reliance was misplaced, because the trial court previously had made a finding that Penzenik did not make such a warning.

636 (1993). A criminal suspect's knowledge or lack of knowledge of constitutional rights is but one factor to be considered in evaluating the totality of the circumstances. *State v. Flores*, 280 Or 273, 277-82, 570 P2d 965 (1977).[3]

■        In this case, the evidence in the record does not compel the conclusion that defendant consented to take the field sobriety tests. Penzenik's testimony at the suppression hearing, quoted previously, supports the trial court's finding that the officer "had" defendant get out of the car. That is the language of a command. The record contains no testimony about what words Penzenik actually used to explain to defendant that he "wanted" defendant to take field sobriety tests. Without knowing what Penzenik said to defendant, and in the light of defendant's testimony that he felt he had no choice but to take the tests, we conclude that the state has not met its burden of proving that defendant's consent was voluntary. *See State v. Warner*, 284 Or 147, 160-61, 585 P2d 681 (1978) (where "state has the burden of proof * * * that consent was voluntarily given, * * * appellate courts must know what the state's witnesses contend was actually said").

On this record, the trial court did not err in granting defendant's motion to suppress.

Affirmed.

---

[3] The state is correct that a determination of "voluntary consent" is not precluded by Penzenik's failure to advise defendant of his *Miranda* rights or of his right to refuse to consent to the tests. Penzenik was under no obligation to advise defendant that he could decline the request to perform field sobriety tests. *See Maddux*, 144 Or App at 40 (an officer no longer has any statutory obligation or reason to recite the warnings in ORS 813.135).