Argued and submitted February 27, reversed and remanded with instructions
May 27, 1998

In the Matter of the Suspension of
the Driving Privileges of
DICKIE LYNN WALLS,
*Respondent,*

*v.*

DRIVER AND MOTOR VEHICLE SERVICES,
*Appellant.*

(9607-05710; CA A95929)

960 P2d 888

Michael C. Livingston, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Michael A. Greenlick argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds, Judge, and Buttler, Senior Judge.

EDMONDS, J.

Buttler, S. J., dissenting.

**EDMONDS, J.**

Driver and Motor Vehicles Services (DMV) appeals the circuit court's judgment vacating its order suspending petitioner Walls' driving privileges because of his refusal to take an Intoxilyzer breath test for blood alcohol content. In this administrative proceeding, the administrative law judge (ALJ) ruled that Walls had consented to perform field sobriety tests and had had an opportunity to consult with counsel before deciding whether he would submit to the breath test. On review, the circuit court reversed the ALJ's rulings. The state appeals, and we review the ALJ's decision for substantial evidence and errors of law. ORS 813.450(4); *Shakerin v. MVD*, 101 Or App 357, 360, 790 P2d 1180 (1990). We conclude that the ALJ did not err and, accordingly, reverse the circuit court.

The ALJ found the following facts. On June 2, 1996, Officer Janzen was on duty monitoring traffic on the St. Helens Highway in Portland. At approximately 8:00 p.m., Janzen saw a Corvette convertible driven by Walls. Using a laser radar gun, Janzen measured the vehicle's speed at 70 mph in a 45 mph speed zone. He stopped Walls for the speeding violation. Walls pulled over in a timely manner.

Janzen noticed an empty beer can on the floor in the front passenger side of Walls' car and a full can of beer on the passenger seat. Walls smelled of alcohol, and his movements were sluggish. When Janzen asked him if he had been drinking, Walls said he had just been drinking on a boat. Janzen asked Walls to get out of the vehicle, and he complied with the request. Janzen then gave Walls *Miranda* warnings, which he said he understood. Janzen testified that he asked Walls to take some field sobriety tests and that he agreed to take them.[1] Janzen explained that he did not give Walls the

---

[1] The following colloquy took place between the ALJ and Janzen:

"[ALJ]: [D]id you ask him to take a field sobriety test?

"[Janzen]: Yes, I did.

"[ALJ]: And what was his response?

"[Janzen]: That he would take them.

"* * * * *

"[Janzen]: He agreed to take the test."

statutory field sobriety test warning or the admonition that his failure to take the tests could be used against him in a court of law. *See* ORS 813.136. Janzen administered four field sobriety tests, all of which indicated to Janzen that Walls was under the influence of alcohol.

At the conclusion of the field sobriety tests, Janzen placed Walls under arrest for driving under the influence of intoxicants (DUII). He then had Walls transported to a police station. While there, Janzen explained to Walls his right to refuse to take the Intoxilyzer breath test and the statutory consequences if he refused. Walls said that he wanted to talk to an attorney before deciding whether to take the test. It was approximately 8:55 p.m. at that time. Walls told Janzen that he wanted to call Bill Scalf, an attorney, but that he did not know Scalf's telephone number. The officer looked in the telephone book and identified Scalf's telephone number. Because Walls had been handcuffed for safety reasons, Janzen dialed the number on the telephone and held the receiver to Walls' ear. Walls' telephone call got an answering machine that did not give an after-hours telephone number for Scalf. Walls wanted to call another attorney that he knew, but Janzen could not find that attorney's telephone number in the phone book.

Walls then asked if he could call his girlfriend, and Janzen dialed the number for him. Walls asked his girlfriend to find Scalf's home telephone number. She said that she would look for it and would call back. When she called back, she reported that she could not locate the number. The girlfriend told Walls that she had talked to his brother and that the brother had said not to take the test until Walls had an opportunity to talk to an attorney. Walls told his girlfriend to find him an attorney.

When Walls' conversation with his girlfriend was over, it was 9:20 p.m. Janzen told Walls that he would have to make a decision about taking the breath test. Walls decided not to take the test. He did not ask to contact anyone else after speaking to his girlfriend the second time. At 9:36 p.m., attorney Michael Greenlick called to speak with Walls. Janzen told him that it was too late because Walls had already

refused to take the test and was on his way to the booking area.

In the administrative proceeding that resulted from Walls' failure to take the breath test, the ALJ ordered Walls' driver's license suspended. Specifically, the ALJ ruled:

"In this case, [Walls] voluntarily gave verbal consent to performing the [field sobriety] tests, after being requested to do so by the officer. The officer did not demand or otherwise coerce [Walls] into performing the tests. [Walls] was not informed of any consequences of refusing to perform the tests, which could also be construed as possibly adding a coercive element. Since [Walls] consented to performing the [field sobriety tests] it is not necessary for the officer to have probable cause and exigent circumstances before administering the [field sobriety tests]. The [field sobriety test] results and other observations made by the officer after the [field sobriety tests] are admissible.

"* * * * *

"[T]he officer gave [Walls] a reasonable opportunity to contact his attorney or others. The fact that the *attempts* to contact the first two attorneys were unsuccessful does not mean [Walls] did not have a 'reasonable opportunity.' " (Emphasis in original.)

Walls sought review of the ALJ's order in the circuit court, which vacated the suspension order. It ruled that "[t]here are not substantial facts or evidence in the record to show that [Walls] voluntarily consented to performing field sobriety tests" and that "[t]here are not substantial facts in the record to support a finding that [Walls] was given a reasonable opportunity to consult with counsel prior to his refusal to submit to the breath test." We disagree with the circuit court's rulings, as amplified below.

Walls argues that there is insufficient evidence from which the ALJ could have concluded that he consented to do the field sobriety tests. Under ORS 813.450(4)(b)(C), a motorist may seek review of the suspension of a driver's license on the ground that the department's exercise of discretion to suspend the license violated a constitutional provision. Article I, section 9, of the Oregon Constitution, is implicated by a request that a motorist consent to undergo field sobriety

tests. *State v. Nagel*, 320 Or 24, 31-37, 880 P2d 451 (1994). In this case, the officer sought Walls' consent to take the field sobriety tests.[2] The results of the field sobriety tests furnished probable cause for the arrest. If the arrest was without probable cause, Walls' refusal to take the breath test was of no legal import. Thus, if the consent to take the field sobriety tests was involuntary, Walls' refusal to take the breath test is vitiated. The facts on which the ALJ relied to find that Walls voluntarily consented are uncontroverted and, thus, substantial evidence supports his underlying findings in that regard. The question for us to decide is whether, as a matter of law, those facts support the conclusion that the consent was voluntary.

Walls relies on our holding in *State v. Lowe*, 144 Or App 313, 926 P2d 332 (1996). *Lowe* involved an appeal from a pretrial order suppressing evidence of the defendant's performance of field sobriety tests and the result of an Intoxilyzer test. In *Lowe*, we held:

> "The record contains no testimony about what words [the officer] actually used to explain to defendant that he 'wanted' defendant to take field sobriety tests. Without knowing what [the officer] said to defendant, and in the light of defendant's testimony that he felt he had no choice but to take the tests, we conclude that the state has not met it burden of proving that defendant's consent was voluntary. *See State v. Warner*, 284 Or 147, 160-61, 585 P2d 681 (1978)." *Id.* at 318.

We concluded that the trial court did not err in granting defendant's motion to suppress on the record before us.

Lowe involved a criminal prosecution. A DMV license suspension is not a criminal proceeding. *Gildroy v. MVD*, 315 Or 617, 621, 848 P2d 96 (1993). Nonetheless, the constitutional standard regarding the voluntariness of a consent to search is the same, and we decide, as a matter of law,

---

[2] In *State v. Ramos*, 149 Or App 269, 272, 942 P2d 841 (1997), we held that "consent is a valid exception to the warrant requirement and that probable cause is not a necessary prerequisite *to asking* a defendant for consent to perform field sobriety tests in the context of a DUII stop." (Emphasis in original.)

whether the facts suffice in that regard. In assessing the voluntariness of a consent to search, we examine the totality of the circumstances to determine whether Walls' consent was given by an act of "free will or was the result of coercion, express or implied." *State v. Wolfe*, 295 Or 567, 572, 669 P2d 320 (1983).

■ The record establishes that Janzen *asked* Walls to take the field sobriety tests and that he *agreed* to take them. Janzen did not advise him about the consequences of refusing to take the field sobriety tests. Before Janzen asked Walls to take the tests, he gave him *Miranda* warnings that explained that he had a right to an attorney and that anything he said could be used against him. Walls said that he understood those rights and never invoked them.[3] Walls did not testify or offer evidence that he felt that he had no choice but to take the tests. Consequently, there is no evidence of express or implied coercion, unlike what occurred in *Lowe*. Under the circumstances, we hold that Walls' consent to take the field sobriety tests was voluntary. On this record, the ALJ properly concluded that Walls had consented to take the field sobriety tests.

■ Next, we turn to the issue of whether Walls was provided a reasonable opportunity to consult with counsel before he refused to submit to the breath test. In *Moore v. Motor Vehicles Division*, 293 Or 715, 723, 652 P2d 794 (1982), the court held that a driver subject to a license suspension, who asks to speak to an attorney, "must be afforded [a] reasonable opportunity to do so unless or until it would interfere with effective administration of the [breath] test." However, the Supreme Court has also recognized that blood alcohol evidence begins to dissipate shortly after consumption ceases and, therefore, that a driver must be tested as soon as practicable. *State v. Milligan*, 304 Or 659, 666, 748 P2d 130 (1988). The burden is on Walls to establish that his *opportunity* to consult with counsel was *unreasonably* restricted. *Ranger v. MVD*, 122 Or App 141, 144, 856 P2d 1050 (1993).

---

[3] Typically, field sobriety tests contain components that are testimonial in nature and potentially self-incriminating. *State v. Fish*, 321 Or 48, 60, 893 P2d 1023 (1995).

Whether he was denied a reasonable opportunity to communicate with his lawyer depends on the circumstances of the officer's interference with that opportunity and the reasons therefor.[4]

■     Janzen and Walls spent about 25 minutes trying to contact an attorney. During that time, Walls attempted to contact Scalf and talked to his girlfriend twice. Walls argues that, because he told his girlfriend to contact a lawyer after he was unable to find Scalf's telephone number, it was unreasonable for Janzen to require him to make an immediate decision and not to afford him any more time to reach another attorney. We disagree. By that time, almost one and a half hours had lapsed after Walls had been arrested. There was nothing to indicate to the officer that any further extension of time would result in Walls' contacting an attorney. Walls had been furnished a 25-minute time period to contact an attorney and had made several phone calls with that purpose. All the law requires is that he be given a "reasonable opportunity" under all the circumstances. In light of the fact that blood alcohol dissipates over time, there is no requirement that a motorist be furnished an unending opportunity to obtain legal advice about taking a breath test. We hold that Walls has not carried his burden of demonstrating that he was denied a reasonable opportunity to contact counsel under the circumstances.[5]

---

[4] The dissent cites *State v. Penrod*, 133 Or App 454, 892 P2d 729 (1995), for the proposition that "the right to consult with counsel in a DUII setting includes the right to a private consultation." 154 Or App at 110. However, in *Penrod*, we based the analysis on Article I, section 11, of the Oregon Constitution, which provides, "*In all criminal prosecutions*, the accused shall have the right * * * to be heard by himself and counsel." (Emphasis supplied.) The Supreme Court held in *Gildroy v. MVD*, 315 Or 617, 621-22, 848 P2d 96 (1993), that Article I, section 11, does not apply to administrative proceedings. Moreover, unlike here, the defendant's attorney in *Penrod* asked the officer to leave the room so he could have a private telephone conversation with his client. The dissent also says that "it is apparent that the way in which Janzen handled this matter required an excessive amount of time and interfered with Walls' right to consult with counsel." 154 Or App at 111. However, Walls never complained to Janzen about Janzen holding the telephone. In fact, Janzen did everything that Walls asked him to do and gave him 25 minutes to contact an attorney. Walls never asked Janzen if he could contact anyone else after he spoke to his girlfriend the second time. The dissent would hold the state responsible for not honoring a request that was never made at the time of the telephone calls.

[5] The facts of *Farley v. MVD*, 137 Or App 492, 905 P2d 248 (1995), *rev den* 323 Or 114 (1996), are similar to this case. In that case, the petitioner called his wife

Reversed and remanded with instructions to reinstate the order of suspension.

**BUTTLER, S. J.,** dissenting.

Because I disagree with the majority's conclusion that respondent was afforded a reasonable opportunity to contact and consult with counsel, I dissent.

After Walls had been placed under arrest at the scene of the stop, he was taken to the Central Precinct and placed in a holding cell. Before Officer Janzen brought him out for questioning, Walls had been handcuffed because, Janzen explained, it was a "personal policy" that he followed at times because he had been injured in the past. He testified that "it's just a safety thing." He did not say that he had any reason to believe that Walls presented a danger to him or to anyone, and there is no evidence that he did.

As a result, when Walls said that he wanted to talk to an attorney before agreeing to take a breath test, he was unable to use the telephone directory himself to find his attorney's number. He had to rely on the officer not only to find the number, but also to dial it, and, more importantly, hold the telephone to his mouth and ear. As it turned out, when the officer dialed the attorney's number, he got an "answering machine." Walls then gave Janzen the name of another attorney, but the officer said he "couldn't find a listing for it or it was another office number."

Walls was not permitted to use the telephone directory or the telephone. However, he still wanted to attempt to get an attorney, so he asked Janzen to dial his girlfriend's number, which Janzen did. Janzen held the telephone to Wall's ear because he was in handcuffs. Walls asked her to find a home number for his attorney because he wanted to

---

and asked her to contact a particular attorney. The officer also offered to contact a local attorney and provided the petitioner with a list of telephone numbers and names of attorneys in the area. The petitioner declined, saying that he only wanted to talk with his Portland attorney. *Id.* at 494. In analyzing whether the petitioner had been given a reasonable opportunity to contact counsel, we examined the total length of time that had lapsed from the time the petitioner had been stopped to when the officer recorded the refusal. *Id.* at 496. In that case, it had been just over an hour since the petitioner had been stopped, and the petitioner had been given 19 minutes to find an attorney. Ultimately, we held that petitioner was afforded a reasonable opportunity to contact counsel.

talk to him before he decided whether to submit to the breath test. She called back to say that she had been unable to contact the attorney. Walls then asked her to contact any attorney.

About 25 minutes had expired from the time Walls said that he wanted to talk to an attorney and the time he asked his friend to get any attorney. At that point, Janzen presented Walls with an ultimatum: he would have to decide on his own whether to submit to the breath test, even though Walls had asked his friend to continue her effort to contact any attorney. Walls said that he would not take the test. He was then taken to a holding cell. Shortly thereafter, an attorney who had been contacted by Walls' girlfriend called and asked to talk to Walls. The attorney was told that it was too late, because Walls had already refused to take the test and was "on his way to the booking area."

The record shows that many lawyers listed in the yellow pages of the telephone directory advertise that they are available 24 hours. However, Walls was not permitted to use the directory; he had to depend on Janzen. As a result, more time was spent trying to reach an attorney than would have been spent if Walls had had direct access to the directory and the telephone.

We have held that the right to consult with counsel in a DUII setting includes the right to a private consultation. In *State v. Penrod*, 133 Or App 454, 456, 892 P2d 729 (1995), the defendant was arrested after refusing to perform field sobriety tests. She was taken to the police station, where she was given *Miranda* warnings. She then asked to speak with her attorney. The officer dialed the number and handed her the telephone. The attorney asked to speak to the officer. He asked the officer to leave the room so that the defendant could have a private conversation with him. The officer said that he could not do that, handed the telephone back to the defendant and remained within a few feet of her while she talked with her attorney. When she was through, she refused to take the breath test, and was convicted. On appeal, we reversed her conviction:[1]

---

[1] Although *Penrod* was a criminal DUII case, there is no reason to treat this administrative case differently. In that case, as well as this case, the issue arose before it was known whether a proceeding would be brought to suspend Penrod's

"We believe that confidentiality is inherent in the right to consult with counsel; to hold otherwise would effectively render the right meaningless." *Id*. at 457.

Walls was never given that opportunity. In order to use the telephone, it was not only necessary for Janzen to be right next to him, holding the telephone against his ear and mouth, but Walls was required to depend on Janzen's use of the telephone directory. There is no way of knowing what would have occurred if Walls had been permitted to use the telephone directory and telephone without the interference by Janzen. However, it is apparent that the way in which Janzen handled this matter required an excessive amount of time and interfered with Walls' right to consult with counsel.

Accordingly, I would hold that Walls sustained his burden to show that his opportunity to consult with counsel was unreasonably restricted, *see Ranger v. MVD*, 122 Or App 141, 144, 856 P2d 1050 (1993), and would affirm.

---

license or whether a criminal action would be filed. The majority suggests that a different rule applies in an administrative proceeding because Article I, section 11, does not apply. 154 Or App at 108 n 4. However, the right to consult with counsel does apply in the administrative context. *Moore v. Motor Vehicles Division*, 293 Or 715, 719, 652 P2d 794 (1982).