**Raschad GALIMBA, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. A–7444.**

Court of Appeals of Alaska.

March 16, 2001.

**16.** AS 22.07.020(b).

Frederick T. Slone, Kasmar & Slone, Anchorage, for Appellant.

Carmen E. ClarkWeeks, Assistant Municipal Prosecutor, and Mary K. Hughes, Municipal Attorney, Anchorage, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Raschad Galimba entered a plea of no contest to one count of driving while intoxicated (DWI), a misdemeanor.[1] Galimba now appeals, arguing that field sobriety tests constitute searches under the state and federal constitutions. He contends that District Court Judge Gregory J. Motyka should have suppressed the results of the field sobriety tests in this case (and all other evidence discovered after the tests) because the police did not have a search warrant, and no exception applied.[2] For the reasons set out below, we affirm.

### Facts and Proceedings

On October 11, 1998, at approximately 2:46 in the morning, Anchorage Police Sergeant Wayne L. Vance stopped Galimba for a traffic violation and erratic driving. Vance testified during an evidentiary hearing that he was on routine patrol that night, when he saw a pick-up truck make a left turn from 5th Avenue onto Gambell Street. He saw that the truck was in the left lane, but made a wide—and illegal—left turn into the center lane to go southbound on Gambell Street. Vance thought that the truck was traveling fast for the turn, and made a "jerking move-

ment." He then saw the truck stop abruptly for a red light at 6th Avenue. When the light changed to green, the truck accelerated rapidly, but was again still making "jerky" movements in its lane. Vance thought that the truck was about to run the light at 9th Avenue, but again the truck stopped abruptly. When this light changed to green, the vehicle proceeded, with similar "jerky" motions. Vance then stopped the vehicle and contacted the driver—Galimba.

Vance said that Galimba's truck "was jerking about the lane, crossing the line. It was just jerking through the lanes. It was weaving." Later, he clarified that Galimba "was ... weaving around his lane. I mean, he didn't go from ... the center lane all the way over into the—the curb lane, nor from that center lane to the middle lane. He didn't do that, but he was weaving in his lane."

When Vance contacted Galimba, he told Galimba that he had been stopped for swerving in the lanes. He asked Galimba if there was anything mechanically wrong with his truck, or if he had been drinking alcohol. Galimba said that he had had a "couple of beers." When Vance asked Galimba to clarify what a "couple of beers" was, Galimba said five or six. Vance also noticed that when asked for his driver's license, Galimba "stopped talking to take his license out. Very methodical movements, but that was all. And that's an indication that you don't want to do two things at once."

Vance also said that he did not immediately notice whether Galimba had any problems with his speech, or that, when Galimba got out of the truck, whether he had any balance problems. He also said that he did not notice any odor of alcohol. But, because Galimba had exhibited poor driving, and had admitted that he had consumed five or six beers, Vance decided to ask Galimba to attempt field sobriety tests.

Anchorage Police Officer Brian L. Balega administered the field sobriety tests. When conducting the horizontal gaze nystagmus (HGN) test, Balega noticed a slight odor of

---

1. AMC 9.28.020.

2. Galimba preserved this issue when he entered his plea. *See Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

alcohol coming from Galimba. Galimba failed the HGN, and performed poorly on other field sobriety tests—the one-legged stand, and the walk-and-turn. He was then arrested for DWI, and was transported to the police substation on 5th Avenue for a breath test on the Intoximeter 3000.

Before trial, Galimba moved to suppress the results of the field sobriety tests and all evidence collected after the tests were administered. Relying primarily on *State v. Nagel*,[3] an Oregon case, he argued that field sobriety tests are intrusive enough to constitute a search; he claimed that since the police had no warrant, the tests were *per se* unreasonable, unless some exception applied. He also claimed that no exception could apply, since the police did not have probable cause to arrest him when they asked him to perform field sobriety tests. Judge Motyka denied Galimba's motion.

In a written decision, Judge Motyka held that "an officer is not required to have probable cause to administer field sobriety tests." Judge Motyka also found that *Nagel* was not "controlling or compelling." Galimba then brought this appeal.

*Is probable cause to arrest required before police can conduct field sobriety tests?*

On appeal, Galimba—relying primarily on *Nagel*[4] and *People v. Carlson*[5]—again contends that field sobriety tests are searches, and that police must either have a warrant or probable cause to arrest before conducting them. We recently addressed a similar claim in *McCormick v. Anchorage*.[6] Relying upon the same cases that Galimba relies upon, McCormick argued that field sobriety tests are searches for constitutional purposes. We were not persuaded by these cases in *McCormick*.

In *McCormick*, we said:

McCormick argues that field sobriety tests constitute a "search" for purposes of the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Alaska Constitution. . . .

McCormick provides scant legal authority to support his assertion that field sobriety tests are a "search". He cites two cases from Oregon [*Nagel* and *Lowe* ], but these were decided under the Oregon Constitution. He also cites one decision of this court [*Leslie v. State*[7]] holding that a breath test is a "search" for constitutional purposes.

Our own research shows that several state courts (in addition to Oregon) have held that field sobriety tests are "searches". But, with two exceptions, all of these states treat field sobriety tests as a form of *Terry [v. Ohio*[8]] stop. Under this view, a police officer does not need probable cause before asking a motorist to perform field sobriety tests. Rather, the officer can conduct field sobriety tests based on a reasonable suspicion that the motorist is driving while intoxicated.[9]

Later—again, not resolving this issue—we responded to another of McCormick's related claims and indicated that:

even if field sobriety tests are a "search", it appears that McCormick's only Fourth Amendment right was the right not to be asked to perform field sobriety tests unless the surrounding circumstances had already given the officer a reasonable suspicion that McCormick was driving while intoxicated.[10]

■ Galimba relies on the same cases that McCormick did. But as we noted in *McCormick*, the Oregon cases are based on the Oregon Constitution. Like McCormick, Galimba also relies on *Leslie v. State*.[11]

3.  320 Or. 24, 880 P.2d 451, 455–56 (1994).

4.  Galimba also cites to another Oregon case, *State v. Lowe*, 144 Or.App. 313, 926 P.2d 332, 335 (1996).

5.  677 P.2d 310, 317 (Colorado 1984).

6.  999 P.2d 155, 159–60 (Alaska App.2000).

7.  711 P.2d 575, 576–77 (Alaska App.1986).

8.  392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

9.  *McCormick*, 999 P.2d at 160.

10.  *Id.* at 161.

11.  711 P.2d 575 (Alaska App.1986).

*Leslie,* however, does not support Galimba's position. Although in *Leslie* this court—construing a statute regulating the use of preliminary breath tests—held that police need probable cause to arrest for DWI before administering a preliminary breath test, we did not address the standard required before conducting other more typical field sobriety tests.[12] And, in fact, in *State v. Grier,*[13] we said that "[w]e agree with the trial court that the HGN test is sufficiently reliable to be considered with other field sobriety tests in determining probable cause"—thus implying that these tests would be administered before the police have probable cause to arrest for DWI. Thus, while breath tests are generally considered searches for constitutional purposes, typical field sobriety tests, including the HGN, are not. Our discussions in *McCormick, Grier,* and *Romo v. Anchorage*[14] confirm that, in Alaska, police do not need probable cause sufficient for an arrest before requesting typical field sobriety tests.

■ Galimba argues, alternatively, that, assuming reasonable suspicion is required before conducting field sobriety tests, we should overturn his conviction because Judge Motyka did not find that the police had reasonable suspicion. However, Galimba argued below that the police did not have *probable cause* to conduct the field sobriety tests. It is clear from our review of Judge Motyka's decision that by rejecting Galimba's probable cause argument, and denying his suppression motion, Judge Motyka implicitly found that the police had reasonable suspicion that Galimba was DWI when they asked Galimba to perform field sobriety tests. Based on our review of the record, we conclude that Sergeant Vance had reasonable suspicion that Galimba was DWI based on Galimba's traffic violation, his erratic driving, and his admission that he had consumed five or six beers. Thus, assuming (without deciding) that field sobriety tests are a form of a *Terry* search that require reasonable suspicion, the tests in this case were justified because Sergeant Vance had reasonable suspicion.[15]

*Conclusion*

The judgment of the district court is AFFIRMED.

---

12. *See id.*

13. 791 P.2d 627, 631 (Alaska App.1990).

14. 697 P.2d 1065, 1069 & n. 1 (Alaska App. 1985).

15. *See Romo,* 697 P.2d at 1069–70; *see also Coleman v. State,* 553 P.2d 40, 46 (Alaska 1976).