Argued and submitted September 6, reversed and remanded December 26, 2013

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## DAVID LINCOLN GRONER,
*Defendant-Respondent.*

Washington County Circuit Court
D115387T; A151933

317 P3d 398

Jamie Contreras, Assistant Attorney General, argued the cause for appellant. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Robert G. Thuemmel argued the cause for respondent. With him on the brief was Thuemmel & Uhle.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

In this driving under the influence of intoxicants (DUII) case, the state appeals a pretrial order suppressing defendant's refusal to submit to a breath test. The state maintains that, when defendant was asked if he was going to take a breath test and he responded, "Not until an attorney [is] right [here] with [me]," that statement amounted to a refusal, despite the fact that police had earlier told him he would have 15 minutes to telephone his attorney. We agree, and we therefore reverse and remand.

The relevant facts are not in dispute. Officer McDougal saw defendant driving erratically and stopped him at approximately 11:00 p.m. on suspicion of DUII, ORS 813.010. After placing defendant under arrest, McDougal transported him to the Washington County Jail where he read defendant his implied consent rights and began the 15-minute observation period before administering the breath test. Defendant repeatedly interrupted McDougal to tell him that "he needed a lawyer there physically present so he could understand better." McDougal offered to read the implied consent information again and slow down if necessary. He also explained, for the first time, that defendant would be allowed "to have a private telephone conversation with an attorney of his choice for 15 minutes." Defendant continued talking over McDougal, would not remain seated, and appeared to be getting increasingly irate, which prompted jail staff to come into the room to instruct defendant to sit down and cooperate.

Following the observation period, just before 12:00 a.m., McDougal explained a second time that defendant would be allowed to use a telephone directory to contact an attorney. Defendant shouted at McDougal, which again drew the attention of the jail staff, and, when defendant would not comply with their instructions, a jail deputy had to physically shove defendant back into his chair. As the jail staff made preparations for defendant to contact an attorney in the privacy of the Intoxilyzer room, McDougal told defendant for a third time that he would have 15 minutes to contact an attorney, with complete privacy and no disturbances. Defendant responded that he wanted an attorney present, and McDougal explained that having an attorney

present was not feasible, would not occur, and was not legally required before administration of the breath test. McDougal told defendant that this was his opportunity to speak to an attorney and closed the door to the Intoxilyzer room to give him privacy.

Five or 10 seconds later, defendant opened the door and stepped out of the room, acting very irate. Four or five jail deputies responded to the shouting and attempted to physically restrain defendant. When defendant pushed one of the jail deputies in the chest, jail staff tackled him and restrained him on the floor. At 12:15 a.m., while defendant was still "somewhat restrained by jail deputies," McDougal asked defendant if he would take a breath test, to which defendant responded, "Not until an attorney [is] right [here] with [me]." McDougal told defendant that he was interpreting that statement as a refusal and entered "Refused" into the Intoxilyzer.

Before trial, defendant moved to suppress evidence of his refusal to take a breath test.[1] Defendant argued that he was denied a reasonable opportunity to consult with an attorney before deciding whether to submit to a breath test, because McDougal and the jail deputies did not allow him to use the entire 15-minute period after he walked out of the Intoxilyzer room. Further, defendant contends that the state did not demonstrate that the restriction on his opportunity to contact counsel was justified by the need to collect evidence or to maintain security. The state remonstrated that defendant was given a reasonable opportunity to contact counsel and declined to take advantage of that opportunity. The trial court granted the motion to suppress and stated that, although the actions of McDougal and the jail staff were "absolutely reasonable," those actions were also "premature." The trial court found that defendant was "due a further opportunity," and stated:

"The law required them to say, * * *. You've got this period of time, and whether we let you go back in the room, yourself, or we all come with you until you find a number to call[,]

---

[1] Defendant also moved to suppress his arrest and his refusal to perform field sobriety tests. The trial court denied his motion to suppress his arrest, but granted his motion to suppress his refusal to perform field sobriety tests. Neither of those motions is at issue in this appeal.

that 15 minutes is ticking. And it's to force the issue with the person to then either say, okay, I won't do it, because I only want someone who's here, or okay, I'll take advantage of it.

"* * * * *

"But th[ere] needed to be that next thing, because I think that the law requires more, and that decision[,] while completely understandable at midnight under those circumstances[,] was premature, and did not meet the letter of the law."

On that basis, the trial court concluded that McDougal was required to give defendant an ultimatum to either take advantage of his opportunity to contact an attorney or forfeit it. Without that, the court ruled that defendant was not given a reasonable opportunity to consult with counsel.

The state appeals, *see* ORS 138.060(1)(c) (state may appeal pretrial order suppressing evidence), renewing its argument that defendant was provided a reasonable opportunity to consult counsel and refused to take advantage of that opportunity. We agree with the state and reverse the decision of the trial court.

We defer to the trial court's factual findings where there is sufficient evidence in the record to support them, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and we review the trial court's order suppressing defendant's refusal to submit to a breath test for errors of law, *State v. Brazil-Kay*, 137 Or App 589, 593, 907 P2d 1116 (1995), *rev den*, 323 Or 484 (1996). When a motorist is arrested for DUII, Article I, section 11, of the Oregon Constitution provides the arrested person the "right upon request to a reasonable opportunity to obtain legal advice before deciding whether to submit to a breath test." *State v. Spencer*, 305 Or 59, 74-75, 750 P2d 147 (1988). When that right is violated, the remedy is to suppress the results of (or refusal to take) the breath test. *Id.* at 76. The state has the burden of proving that a motorist was afforded a reasonable opportunity to consult with counsel in private. *State v. Carlson*, 225 Or App 9, 14, 199 P3d 885 (2008). However, the motorist does not have an absolute right to speak with counsel, but only the right to a reasonable opportunity to do so. *Brazil-Kay*,

137 Or App at 594. Although the police must provide a reasonable opportunity to contact counsel, it is the motorist's obligation to take advantage of that opportunity. *See Brazil-Kay*, 137 Or App at 597 ("[U]nder the circumstances here, defendant was given a reasonable opportunity to consult with an attorney before taking the breath test. The fact that she did not make better use of that opportunity does not mean that it was denied her." (Internal citations omitted.)); *State v. Greenough*, 132 Or App 122, 125-26, 887 P2d 806 (1994) ("That defendant did not make a reasonable effort to contact an attorney does not mean that he was denied a reasonable opportunity to do so.").

Here, there is no dispute that the circumstances presented to defendant when he entered the Intoxilyzer room were adequate. Defendant was told he would have the opportunity to contact an attorney for 15 minutes. He was aware that he could speak confidentially in the privacy of the Intoxilyzer room. He was given a telephone directory and was able to operate the telephone. The trial court, however, concluded that McDougal infringed on defendant's reasonable opportunity after defendant walked out of the Intoxilyzer room, suggesting several ways in which McDougal could have done more to ensure that defendant was aware of his options. We disagree. We find that defendant's comments and conduct were sufficient to indicate unambiguously that he had no intention of contacting an attorney. Defendant was informed of the limited nature of his right to seek legal advice three times before entering the Intoxilyzer room, and he never manifested an intent to use that opportunity to telephone an attorney. Instead, he continued to repeat that he wanted a lawyer present. Defendant also made no attempt to contact an attorney upon entering the room. The record indicates that within five to 10 seconds of the door being closed behind him, he left the room, was verbally irate, and began a physical altercation with the jail staff. Finally, when McDougal asked defendant if he would submit to a breath test, defendant remained unmoved from his original position of wanting an attorney present. He made no indication that he wished to revisit his earlier opportunity, but instead replied that he would not submit to a breath test until he had an attorney present, already

having been told that that was a condition to which the police would not and need not consent. We therefore conclude that defendant's conduct, in these circumstances, unequivocally indicated he did not wish to take advantage of the opportunity provided to him to contact an attorney.

Furthermore, McDougal was not required, as the trial court ruled, to "force the issue" and give defendant a final ultimatum to exercise or lose his right to consult with an attorney. Police must scrupulously honor a motorist's right to a reasonable opportunity to consult with an attorney, but they are not required to ensure the motorist exercises that right. In essence, defendant proclaimed that he would not submit to the breath test until and unless the police would consent to a demand that they had already unequivocally told him they would not meet. Thus, the actual duration of defendant's opportunity to consult with an attorney is not relevant here. Although 15 minutes is frequently cited as a typical amount of time necessary for a reasonable opportunity to obtain legal advice, that time period is meant to guarantee that a defendant will have at least 15 minutes to look for and talk with an attorney *if the defendant wishes.* Where the defendant elects not to use 15 minutes to contact an attorney, as is the case here, there is no "ticking clock," and the actual duration of the opportunity is not relevant.

Therefore, we conclude that defendant unequivocally demonstrated that he did not intend to take advantage of the opportunity provided to him. Defendant was entitled to a reasonable opportunity to obtain legal advice. He received that. Under these facts, the trial court erred in suppressing the evidence of defendant's refusal to take the breath test.

Reversed and remanded.